CAROL HAYNES McLEAN (FISK) v. RUSSELL L. McLEAN, III

No. 8728DC574

(Filed 29 December 1987)

**1. Divorce and Alimony § 30— equitable distribution—tenancy by the entireties—consideration from separate property—presumption of gift**

The presumption of a marital gift for entireties property purchased by a spouse with separate property is still the law in this state, and such presumption is rebuttable by clear, cogent and convincing evidence.

**2. Divorce and Alimony § 30— equitable distribution—presumption of gift to marital estate—insufficient rebutting evidence**

The trial court did not err in finding that defendant husband failed to rebut the presumption of a gift to the marital estate of funds used to purchase a house and an office building placed in the names of both spouses as tenants by the entireties where defendant showed that he used funds inherited from his father in making such purchases and elicited testimony from plaintiff wife that she did not want to be awarded anything from defendant's inheritance.

**3. Divorce and Alimony § 30— equitable distribution—personal property—no presumption of gift**

Even though the names of both spouses were on a promissory note given in exchange for the husband's separate property, the note remained the husband's separate property where no contrary intention was stated in the conveyance. N.C.G.S. § 50-20(b)(2).

**4. Divorce and Alimony § 30— equitable distribution—stock in husband's name as marital property**

The trial court did not err in classifying corporate stock issued in the name of defendant husband alone as marital property, although defendant testified that the stock was a gift from the corporation's president, where the president testified that he expected defendant to be a local contact for the corporation and to perform managerial services for the corporation.

**5. Divorce and Alimony § 30— equitable distribution—valuation of law practice—expert testimony**

The trial court did not err in the admission of the opinion of plaintiff wife's expert witness regarding the value of defendant husband's law practice where the witness explained the methods used to reach his opinion.

**6. Divorce and Alimony § 30— equitable distribution—valuation of law practice—insufficient**

The trial court's valuation of defendant's law practice at $35,000 was not supported by the evidence where the trial court used a "return on investment" approach but there was no evidence before the court to support the rate of return used by the court or to indicate that such method would yield an accurate valuation.

McLean v. McLean

**7. Divorce and Alimony § 30— equitable distribution—credit for mortgage payments after separation**

The trial court in an equitable distribution action should have credited defendant with at least the amount by which he decreased the principal amount of the joint debt on the home of the parties by the payments made from his separate property after the date the parties separated.

**8. Divorce and Alimony § 30— equitable distribution—personal property—distribution different from memorandum**

The trial court did not err in ordering the distribution of personal property in a manner different than that agreed upon in a handwritten memorandum where the agreement was not acknowledged before a certifying officer as defined in N.C.G.S. § 52-10(b) and was thus not binding upon the court.

Judge GREENE concurring in part and dissenting in part.

APPEAL by defendant from *Fowler, Judge.* Judgment entered 13 November 1986 in District Court, BUNCOMBE County. Heard in the Court of Appeals 2 December 1987.

Plaintiff Carol McLean Fisk and defendant Russell McLean were married 23 November 1966. In January 1984, the parties separated. On 3 January 1985, plaintiff filed an action seeking divorce, custody, child support, and equitable distribution of the marital property. Defendant answered and filed a counterclaim for child custody, divorce, and equitable distribution. On 29 March 1985, a judgment of absolute divorce, which also resolved the issues of custody and child support, was entered. The equitable distribution claim was heard on 2 May 1986.

Evidence before the trial court tended to show the following: On 2 October 1978, defendant's father died, and defendant and his sister each inherited at least $100,000.00 in cash and property from their father's estate. Assets received by defendant from his father's estate were used to purchase some of the assets at issue in this case. At the time of the father's death, the parties had assets with a net value of approximately $45,000.00. Among those assets was a house which the parties sold for $39,662.38, applying the proceeds towards the purchase of a lot and construction of a home at 749 Camp Branch Road in Haywood County. In addition to those proceeds, the parties secured a loan of approximately $55,000.00 and used $75,311.17 of defendant's separate funds from his father's estate to build the house. Title to the Camp Branch Road property is held by the parties as tenants by the entirety.

On 12 October 1979, defendant and his sister sold a house inherited from their father to E. P. Buie and wife. The purchasers made a cash downpayment, part to defendant and part to his sister, and executed a note (Buie note) payable one-half to defendant's sister and one-half to defendant and plaintiff. Defendant opened two bank accounts in his name, one for his share of the downpayment and the other for the note payments.

Also in 1979, the parties purchased as tenants by the entirety an office building in Waynesville, North Carolina. Defendant paid $7,000.00 from his inheritance and both parties signed a note payable to the seller for three annual installments of $5,499.40 plus interest and assumed a first mortgage of $40,501.81. Defendant made the three installment payments from the following sources: an account containing defendant's separate funds from his inheritance; proceeds from the sale of stock defendant inherited from his father; and an account containing defendant's separate funds from the Buie note payments. Defendant set up another bank account for rents collected from the lease of the office building. The account was used to pay the building's operating expenses and to make the first mortgage payments.

The parties were also the payees of a $32,000.00 promissory note (Medford note) which was payable in 240 monthly installments of $236.20. Defendant collected 34 monthly payments during the period from the date of separation until the equitable distribution hearing. Defendant also held, in his name, 272 shares of stock of Eagles Nest Mountain Estates, Inc. (Eagles Nest). In addition, defendant was a shareholder in a law firm on the date of separation.

In its order, the court: (a) classified the Camp Branch Road property as marital property having a net value of $177,725.00 and ordered it distributed to the defendant; (b) classified the Buie note as marital property with a net value of $23,000.00 and ordered it distributed to plaintiff; (c) classified the Eagles Nest stock as marital property with a net value of $50,000.00 and ordered it distributed to plaintiff; (d) classified defendant's share of the law practice as marital property with a net value of $35,000.00 and ordered it distributed to defendant; (e) classified the office building as marital property with a net value of $59,082.72 and ordered it distributed to plaintiff; and (f) classified

the Medford note as marital property with a net value of $21,441.72 and ordered it distributed to plaintiff. The court also found that defendant had appropriated the Medford note payments to his own use and ordered him to pay plaintiff $236.20 per month for 36 months beginning 1 November 1986 to reimburse plaintiff for the payments he collected.

From this order, defendant appeals.

*Riddle, Kelly & Cagle, P.A., by Robert E. Riddle, for plaintiff-appellee.*

*Long, Parker, Payne & Warren, P.A., by Robert B. Long, Jr., and William A. Parker, for defendant-appellant.*

MARTIN, Judge.

Defendant assigns error to the trial court's classification of the Camp Branch Road property, the office building, the Buie note and the Eagles Nest stock. He also assigns error to the valuation of his law practice and to the order that he repay plaintiff for the payments he collected under the Medford note after separation. Finally, defendant contends the trial court erred by distributing personal property listed in a handwritten memorandum signed by the parties, but not acknowledged before a certifying officer, in April 1984.

Defendant's first contention is that "[t]he court erred in failing to make appropriate findings of fact, conclusions of law, and orders that the defendant's separate inherited funds which were invested in the Camp Branch Road property and in the office building remained the separate property of the defendant." He also argues that "[t]he trial court erred by requiring the defendant to present clear, cogent and convincing evidence to rebut the presumption of gift utilized by the trial court in regard to the Camp Branch Road property [and] office building." We disagree.

It is true that there may be both marital and separate ownership interests in the same property. *Wade v. Wade*, 72 N.C. App. 372, 325 S.E. 2d 260, *disc. rev. denied*, 313 N.C. 612, 330 S.E. 2d 616 (1985). Our courts have adopted a source of funds approach to distinguish marital and separate contributions to a single asset. *Id.* Under the source of funds approach, each party retains as

separate property the amount he contributed to purchase the property plus passive appreciation in value. *Id.* Thus, defendant contends the contributions from his inherited funds to the purchase price of the home and office building remain his separate property. However, "where a spouse furnishing consideration from separate property causes property to be conveyed to the other spouse in the form of tenancy by the entireties, a presumption of a gift of separate property to the marital estate arises, which is rebuttable by clear, cogent, and convincing evidence." *McLeod v. McLeod,* 74 N.C. App. 144, 154, 327 S.E. 2d 910, 916-17, *cert. denied,* 314 N.C. 331, 333 S.E. 2d 488 (1985). By placing title to the properties in both names as tenants by the entirety, defendant is presumed to have made a gift of his separate property to the marital estate.

[1] Defendant argues that the presumption of marital gift for entireties property is no longer valid in this State and that the court erred by requiring him to present clear, cogent, and convincing evidence that he intended to retain a separate interest in the property. Defendant cites *Johnson v. Johnson,* 317 N.C. 437, 346 S.E. 2d 430 (1986), and *Dunlap v. Dunlap,* 85 N.C. App. 324, 354 S.E. 2d 734 (1987) as authority for his position. In *Dunlap,* this Court stated that a footnote in *Johnson* overruled a presumption stated in *McLeod* that all property acquired by the parties during the marriage is marital property. *Id.* at 328, 354 S.E. 2d at 736. The issue before us, however, is not whether all the property acquired during the marriage is presumed to be marital property, but whether the use of separate property to acquire property, title to which is taken as tenants by the entirety, creates a presumption of a gift to the marital estate. As neither *Johnson* nor *Dunlap* disturbed the presumption on this issue stated in *McLeod,* we hold that the trial court properly applied the presumption of a gift to the marital estate in this case.

[2] Defendant next contends that if the trial court was correct in applying the presumption of gift to the marital estate and in requiring him to present clear, cogent, and convincing evidence to rebut the presumption, then the court erred in finding he had not met his burden of proof. Defendant presented evidence showing the source of his separate funds and their application to the Camp Branch Road property and the office building. He also elicited testimony from plaintiff that she did not want to be awarded any-

thing from defendant's inheritance. Whether defendant succeeded in rebutting the presumption of gift to the marital estate by clear, cogent, and convincing evidence is a matter left to the trial court's discretion. Defendant's evidence "may be clear and cogent, but evidently it was not convincing to the trial court." *Draughon v. Draughon*, 82 N.C. App. 738, 739, 347 S.E. 2d 871, 872 (1986), *cert. denied*, 319 N.C. 103, 353 S.E. 2d 107 (1987). There is some competent evidence to support the trial court's findings; therefore, its rulings will not be disturbed on appeal. *Lawing v. Lawing*, 81 N.C. App. 159, 344 S.E. 2d 100 (1986). These assignments of error are overruled.

[3] Defendant next contends the trial court erred in classifying the Buie note as marital property. He contends that even though both parties' names were on the note, the note remained his separate property. We agree with defendant that the Buie note is his separate property.

> The presumption of gift created by the holding in *McLeod* was limited in its application to real property acquired by both spouses, as tenants by the entirety, in exchange for the separate property of one of them. We decline to extend that presumption to jointly held personal property which is acquired in exchange for the separate property of one spouse, as to do so would seem to defeat the legislative intent of G.S. 50-20(b)(2).

*Manes v. Harrison-Manes*, 79 N.C. App. 170, 172, 338 S.E. 2d 815, 816 (1986). Separate property remains separate property when it is exchanged for other separate property unless the conveyance states a contrary intention. G.S. 50-20(b)(2). The record discloses no evidence of such a contrary intent with respect to the Buie note. Even though both names are on the note, that fact alone is not sufficient to show an intent to make a gift to the marital estate. *Manes, supra.* The Buie note, property acquired in exchange for defendant's separate property, remains his separate property. Thus, the court erred in distributing it as part of the equitable distribution order.

[4] Defendant next contends that the court erred by classifying the Eagles Nest stock as marital property. Defendant testified that the stock, issued in his name alone, was a gift from the corporation's president, Mr. Tom Daniels, who filed a gift tax return

with regard to the transfer. Defendant also testified that the stock was not given as payment for services to the corporation but that he continued to bill Eagles Nest for legal services. In his deposition, however, Mr. Daniels testified that while he did transfer the stock to defendant to involve defendant as an owner of the corporation, he expected defendant to be a local contact for the corporation and to perform managerial services. The corporation continued to pay defendant for his legal services, but defendant did not receive a managerial fee for his other services until he became an officer of the corporation. Mr. Daniels did not recall whether he filed a gift tax return with regard to the transfer of the stock. The court also found that both plaintiff and defendant visited the corporation's property "to check on the property and follow the progress of various developments" on the property. The evidence is sufficient to support the trial court's finding that the stock is marital property; therefore, its ruling will not be disturbed on appeal. *Lawing, supra.*

Defendant assigns as error the admission at trial of plaintiff's opinion that the value of defendant's professional association was "at least fifty thousand dollars" on the date of separation. He does not argue this assignment of error. Thus, it is deemed abandoned. App.R. 28.

[5] Defendant also assigns error to the admission of the opinion of plaintiff's witness, Foster Shriner, regarding the value of defendant's law practice. Mr. Shriner, received by the trial court as an expert, testified that the value of the professional association on the date of separation was $61,910.00. Defendant contends that this testimony should have been excluded as the witness did not "follow the prerequisites as set forth in *Poore v. Poore* in making a determination as to the value of this professional association." The requirement for the admissibility of an expert's opinion is that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." G.S. 8C-1, Rule 702. The criteria set out in *Poore v. Poore*, 75 N.C. App. 414, 331 S.E. 2d 266, *disc. rev. denied*, 314 N.C. 543, 335 S.E. 2d 316 (1985), are factors for the court to consider in valuing the professional interest and are not criteria for admissibility of the expert's opinion. Mr. Shriner explained the methods used to reach his opinion of value, and defendant was free to, and did, cross-examine the witness regarding

the factors set out in *Poore*. We find no error in the admission of this evidence.

**[6]** Defendant also argues the court's valuation of the law practice at $35,000.00 is not supported by the evidence. "The task of the reviewing court on appeal is to determine whether the approach used by the trial court reasonably approximated the net value of the . . . interest." *Poore v. Poore, supra* at 419, 331 S.E. 2d at 270. Defendant testified and offered the testimony of several local attorneys that the value of his law practice on the date of separation was around $9,000.00 to $12,000.00. Plaintiff's witness Shriner valued the practice at $61,910.00. He reached this valuation by valuing the practice's assets and using a "multiple of earnings" approach to arrive at his figure. Based on the figure supplied by Shriner, the trial court used a "return on investment" approach to compute a value for the practice. Assuming *arguendo* that the "return on investment" approach is an acceptable method of valuing a professional practice, there was no evidence before the court to support the rate of return used by the court in making its calculations or to indicate that such a method would yield an accurate valuation. Therefore we must vacate the court's findings with respect to the value of defendant's law practice.

Defendant next excepts to the trial court's finding of fact that he converted the money collected from the Medford note to his own use and assigns error to the court's order that he be required to repay plaintiff the amount collected. At trial, defendant testified he used the sums collected from the Medford note to pay bills, house payments, insurance and "anything I need money for I'll put it in the Camp Branch property." His testimony supports the court's finding that defendant used the money for his own purposes; that finding is, therefore, conclusive. *Lawing, supra.* In addition, the court's order that defendant repay plaintiff for the amounts collected is not an abuse of its discretion and, therefore, will not be disturbed. *See White v. White*, 312 N.C. 770, 324 S.E. 2d 829 (1985).

**[7]** Defendant also assigns error to the trial court's failure to find that he had made all payments on the Camp Branch Road property from the date of separation and to its failure to credit him with the amount of those payments, which were made from his post-separation, and thus separate, property. *Hunt v. Hunt*, 85

N.C. App. 484, 355 S.E. 2d 519 (1987), requires the court to credit a former spouse "with at least the amount by which he decreased the principal owed" on marital debt by using his separate funds. *Id.* at 491, 355 S.E. 2d at 523. On remand, the court should enter an order crediting defendant with at least the amount by which he decreased the principal amount of the joint debt. *Id.*

[8] By his final assignment of error, defendant contends the trial court erred by ordering the distribution of personal property in a manner different than previously agreed in a handwritten memorandum. We disagree. G.S. 50-20(d) requires that written agreements between spouses distributing property must be "duly executed and acknowledged in accordance with . . . G.S. 52-10 and 52-10.1" in order to be binding on the parties. As the handwritten agreement was not acknowledged before a certifying officer as defined in G.S. 52-10(b), it was not binding upon the court and the court was free to distribute the property. This assignment of error is overruled.

For the reasons stated, the equitable distribution judgment entered in this case is vacated. This case is remanded for a new determination of the value of defendant's law practice, classification of the parties' property consistently with this opinion, and entry of an appropriate order distributing that property.

Vacated and remanded.

Chief Judge HEDRICK concurs.

Judge GREENE concurs in part and dissents in part.

Judge GREENE concurring in part and dissenting in part.

I concur in the majority's treatment of all but the "Camp Branch Road" property and buildings. I dissent from the majority's holding that defendant's use of his separate property to acquire the Camp Branch property and buildings "by the entirety" is presumed to be a "gift" to the marital estate. N.C.G.S. Sec. 50-20(b)(2) provides in part:

Property acquired in exchange for separate property shall remain separate property *regardless of whether the title is in*

*the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance.* [Emphasis added.]

There is only one reasonable reading of this provision: However acquired property is titled, the manner of titling does not itself affect the separate status of property acquired in exchange for separate property; *but* an acquisition of property with separate funds nevertheless *may* be considered marital property if such an intent is "expressly stated in the conveyance." To hold that titling property by the entirety *itself* constitutes the necessary express intent renders the statutory provision a *non sequitur.*

The source of the majority's erroneous notion of a "marital gift presumption" is *McLeod v. McLeod,* 74 N.C. App. 144, 327 S.E. 2d 910, *cert. denied,* 314 N.C. 331, 333 S.E. 2d 488 (1985). In construing the above-quoted provision of Section 50-20(b)(2), the *McLeod* court reasoned that the Legislature's addition of the "express contrary intent" exception embodies the common law analysis of *Mims v. Mims,* 305 N.C. 41, 286 S.E. 2d 779 (1982):

Prior to *Mims* that provision read, 'property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both.' G.S. 50-20(b)(2) (1981). Given that language, the *Mims* court wrote 'it does appear . . . that in the context of a divorce and the 'equitable distribution' of all 'marital property' the Legislature has opted for a rule that where land or personalty is purchased with the 'separate property' of either spouse, it remains the 'separate property' of that spouse regardless of how the title is made.' *Mims,* 305 N.C. at 53, 286 S.E. 2d at 787. In apparent response to this reading of the statute as it was written, the Legislature amended the separate provision to state that property acquired in exchange for separate property shall remain so regardless of title 'and shall not be considered to be marital property *unless a contrary intention is expressly stated in the conveyance.*' [emphasis in original] [citation omitted]. . . . *Thus the legislature appears to have availed itself of the reasoning in Mims whereby when spouses title their real property without regard to the source of the consideration a gift will be presumed.* [Emphasis added.]

*McLeod,* 74 N.C. App. at 155-56, 286 S.E. 2d at 917-918 (quoting *Mims,* 305 N.C. at 53, 286 S.E. 2d at 787).

The *McLeod* construction of the statute in light of *Mims* is neither required by *Mims* itself nor permitted by the plain language of Section 50-20(b)(2). In order to incorporate the *Mims* result, the Legislature would have to completely delete that portion of the statute which states the manner of titling is irrelevant. The Legislature did not do this nor did it specifically "avail itself" of the *Mims* reasoning: Instead of creating a *presumption* of gift to the marital estate as in *Mims,* the Legislature instead provided a method by which a spouse could make such a gift by expressing the specific intent to confer a gift in the conveyance itself.

As its interpretation contravened the language of Section 50-20(b)(2), the *McLeod* court was also constrained to create an apparent exception to the "source-of-funds" analysis previously adopted by this court in *Wade v. Wade,* 72 N.C. App. 372, 325 S.E. 2d 260 (1985). *See McLeod,* 74 N.C. App. at 154, 327 S.E. 2d at 916-17 (explicitly adopting marital gift presumption rather than follow *Wade*). Given the *McLeod* court's explicit refusal to follow *Wade,* it is perplexing that the court subsequently stated that "the marital gift presumption follows *naturally* from this court's previous decisions in *Loeb* [citation omitted] *and Wade. . . .* In *Loeb* the Court held that property acquired during the marriage is *presumably* marital . . . ." *Id.* at 157, 327 S.E. 2d at 918 (citation omitted) (emphasis added).

More important, our Supreme Court has expressly overruled the basic presumption of marital property underlying both *Loeb* and *McLeod. See Johnson v. Johnson,* 317 N.C. 437, 454 n.4, 346 S.E. 2d 430, 440 n.4 (1986). While the *Johnson* Court did not, strictly speaking, specifically address the notion of a "marital gift" presumption, it expressly overruled the more basic presumption of marital property from which the *McLeod* court stated the "marital gift" presumption "follows naturally." *Cf. McLeod,* 74 N.C. App. at 157, 327 S.E. 2d at 918. Furthermore, the *Johnson* Court's favorable citation of *Wade* in its footnote clearly demonstrates its belief that the *Wade* "source-of-funds" analysis does *not* allow a "marital gift" *presumption.* 317 N.C. at 454 n.4, 346 S.E. 2d at 440 n.4 (in overruling the marital property pre-

sumption of *Loeb* and *McLeod*, the Court cited *Wade* as "contra" *Loeb* and *McLeod*).

I recognize that the provisions of Section 50-20(b)(2) also pro-vide that "property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance." This provi-sion may indeed "create a presumption that *gifts* between spouses are marital property." *McLeod*, 74 N.C. App. at 155, 327 S.E. 2d at 917 (emphasis added). However, the provision provides no support for the *McLeod* notion that simply "titling" property jointly creates a "gift" to the other spouse in the first place. Given the statutory provision that joint title is irrelevant to the classification of property acquired in exchange for separate prop-erty, the express "contrary" intent required by the statute is itself the vehicle by which a spouse may evidence the intent to confer a "gift" on the other spouse. The *McLeod* interpretation simply assumes its desired conclusion as a basic premise.

The illogic of *McLeod* is further revealed by the limitation of *McLeod* expressed in *Manes v. Harrison-Manes*, 79 N.C. App. 170, 338 S.E. 2d 815 (1986). The *Manes* court wisely declined to extend the *McLeod* presumption to jointly-held "personal" property "as to do so would seem to defeat the legislative intent of G.S. 50-20 (b)(2)." 79 N.C. App. at 172, 338 S.E. 2d at 816. However, there is no principled distinction which would justify treating real and personal property so differently under Section 50-20(b)(2). *Cf. Mims*, 305 N.C. at 53, 286 S.E. 2d at 787 (noting the statutory pro-vision applies "where land or personalty is purchased with the separate property of either spouse"). It is not the extension of *McLeod*, but *McLeod* itself, which "defeat[s] the legislative intent of G.S. 50-20(b)(2)."

Defendant's counsel vigorously argued this court should over-rule *McLeod* as a direct contravention of the specific provisions of Section 50-20(b)(2). In affirming the trial court's disposition of the Camp Branch property and buildings, the majority ignores coun-sel's arguments and the plain language of Section 50-20(b)(2). I ac-cordingly dissent from the majority's affirmance of the trial court in this respect and would remand so that, under Section 50-20 (b)(2), *plaintiff*, not defendant, would be required to demonstrate the conveyance contains the express intent that the Camp Branch

property was acquired as a gift by defendant to the marital estate.