BETTINA COLEY LOVING v. LARRY DALE LOVING

No. COA94-731

(Filed 18 April 1995)

**1. Divorce and Separation § 147 (NCI4th)— distribution of marital debt**

The trial court distributed a $9,000 marital debt (an amount owed on marital property) to plaintiff wife where the property had a value of $28,250 but the court placed a value of only $19,250 on the property, and this property was distributed to plaintiff.

**Am Jur 2d, Divorce and Separation §§ 915 et seq.**

**2. Divorce and Separation § 148 (NCI4th)— equitable distribution—payment of marital debt—distributional factor**

The trial court had the discretion to treat the post-separation payment of a marital debt by the spouse not receiving distribution of the debt as a distributional factor.

**Am Jur 2d, Divorce and Separation §§ 915 et seq.**

**3. Divorce and Separation § 148 (NCI4th)— equitable distribution—payment of marital debt—decrease in debt value—distributional factor**

Where a marital debt distributed to plaintiff wife was valued at $9,000 on the date of separation but was paid in full by defendant husband after the date of separation and thus had a value of zero on the date of distribution, the trial court was required to consider this decrease in value as a distributional factor in making its distribution of marital property.

**Am Jur 2d, Divorce and Separation §§ 915 et seq.**

**4. Divorce and Separation § 122 (NCI4th)— conveyance from husband's parents—tenancy by entirety—presumption of gift to marital estate**

Assuming that any or all of the property acquired by deed from defendant husband's parents was a gift only to defendant from his parents and was therefore defendant's separate property, a gift by defendant to the marital estate is presumed from defendant's direction that the title be placed in the names of both parties as tenants by the entirety, and where defendant did not produce any evidence to rebut the presumption of a gift to the marital estate, the trial court did not err in concluding that the entire property is marital property.

**Am Jur 2d, Divorce and Separation §§ 884-886.**

Appeal by defendant from order entered 10 January 1994 in Cabarrus County District Court by Judge Clarence E. Horton, Jr. Heard in the Court of Appeals 23 March 1995.

*Johnson, Roberts & Hastings, by Randell F. Hastings, for plaintiff-appellee.*

*James, McElroy & Diehl, P.A., by William K. Diehl, Jr. and Katherine Line Thompson Kelly, for defendant-appellant.*

LOVING v. LOVING

[118 N.C. App. 501 (1995)]

GREENE, Judge.

Larry Dale Loving (defendant) appeals from a judgment of equitable distribution entered in Cabarrus County District Court on 10 January 1994.

Defendant and Bettina Coley Loving (plaintiff) were married 9 December 1966, separated on 23 June 1989, and 'divorced on 4 September 1990. On 30 June 1989, plaintiff filed an action against defendant for equitable distribution of marital property in Cabarrus County District Court. An equitable distribution trial was held on 10 October 1993 and 11 November 1993.

The parties stipulated to the classification, valuation and distribution of much of the property. There did exist disagreement with regard to a tract of land known as the Alleghany property and a tract of land containing the marital residence known as the Midland property. With regard to the Alleghany property, the parties stipulated that it was marital property.

The evidence is that the Alleghany property had a value as of the date of separation of $28,250 and that there existed, on the date of separation, a debt on the property of $9,000. There is no dispute among the parties that that debt is a marital debt and was fully paid by the defendant after the date of separation and before the trial.

The Midland property was acquired by the parties as tenants by the entireties, during the marriage, by deed from the defendant's parents. There is no dispute as to the value of the Midland property, as the disagreement relates to whether the property is marital or separate.

Defendant testified that his parents transferred title to the Midland property to plaintiff and defendant by deed dated 6 May 1968. The parties paid $40,000 for the property with no money down and financed by a deed of trust signed by both plaintiff and defendant back to defendant's parents. Defendant testified that he "was to pay [his] parents $150 a month interest free until the forty thousand was paid off." The parties paid the full $40,000 out of their incomes over a twenty-two year period.

Defendant testified to the following concerning the Midland property:

My parents told me they would like for me to have the [Midland property]. This is probably prior to the marriage that we dis-

cussed it and I said, "I don't—I don't have a family. . . . But then after I got married and had a child . . . I started looking for a place to live. And daddy said, "I want you to have the [Midland property]." . . . "I want to give you the house and forty acres." And I said, "No." I said, "I don't want to do that." And he said, "Well, I'll give it all to you, then." And I said . . . "I want to pay you something so you can retire and enjoy the rest of your life." So then we talked about, you know, this, that and the other and I said, "$40,000." And he said—well, I don't remember what else he said, but then he did check with my brothers and sister because it was to be part of my inheritance.

Defendant also testified his mother told him the Midland property was part of his inheritance and he did not remember any discussions about his parents making a gift of any of the Midland property to plaintiff. He stated that the plaintiff's name is on the deed because "I was a trusting husband and I thought it would be best if her name would be put on there too." During his testimony, defendant identified a letter written in his mother's handwriting and signed by her on 9 September 1989 to William Rogers, the lawyer who then represented defendant. In the letter, defendant's mother wrote that her husband "wanted [defendant] to have a house so we agreed to let him have not only the house and two acres, but all of it for $40,000. This was agreed interest free for his inheritance. He and [plaintiff] paid $150.00 per mo. then $200.00 per month until paid in full."

Lucy Jarvis, defendant's sister, testified that "Daddy wanted to give [the Midland property] to [defendant]. Mother said that it wouldn't be quite right just to give it to him." Paul Finnen, a residential real estate appraisal expert, testified that the present value in 1968 of a $40,000 interest-free loan payable over twenty-two years was $21,000, and this price was $45,000 less than the actual worth of the Midland property.

The trial court determined that both the Alleghany and Midland properties were marital. As to the Midland property, the court found as a fact that "[i]f any portion of this transaction be held to be a gift only to the defendant, he clearly intended to share that gift with his wife, the plaintiff. The defendant has failed to rebut the presumption, by clear and convincing evidence . . . that the conveyance . . . constituted a gift of the property to the marital estate." The trial court valued the Alleghany property at $19,250 and the Midland property at $238,021. The trial court distributed the marital properties, with the

**LOVING v. LOVING**

[118 N.C. App. 501 (1995)]

Alleghany property going to the plaintiff and the Midland property going to the defendant. The court finally determined, after making extensive findings on evidence offered with regard to the distributional factors set out in N.C. Gen. Stat. § 50-20(c), that "an unequal division of the marital assets in favor of the defendant would be equitable," with the "plaintiff receiving 43% of the marital property and the defendant receiving 57% of the marital property." One of the distributional factor findings was that the defendant had paid, after the date of separation, the $9,000 debt secured by the Alleghany property.

---

The issues presented are whether the trial court erred in (I)(A) failing to distribute the $9,000 marital debt, (B) treating the defendant's post-separation payment of the $9,000 debt as a distributional factor, and (C) failing to treat the post-separation decrease in value of the $9,000 debt as a distributional factor; and (II) determining that the Midland property constituted marital property.

I

This Court has consistently held that there can be "no complete and equitable distribution . . . without also . . . distributing [the marital] debt." *Byrd v. Owens*, 86 N.C. App. 418, 423, 358 S.E.2d 102, 106 (1987); *Smith v. Smith*, 111 N.C. App. 460, 509-10, 433 S.E.2d 196, 226 (1993) (marital debt must be valued and distributed), *rev'd in part*, 336 N.C. 575, 444 S.E.2d 420 (1994). "Debt, as well as assets, must be classified as marital or separate property . . . [and if marital], the court must value the debt and distribute it." *Byrd*, 86 N.C. App. at 424, 358 S.E.2d at 106. The valuation must occur "as of the date of the separation of the parties." N.C.G.S. § 50-21(b) (1994). The classification, valuation and distribution of the marital debt is required without regard to whether the debt may be liquidated after the date of separation and before the trial. Just as with assets, the question is whether the debt was acquired during the marriage and before the date of separation and in existence on the date of the separation. *See Talent v. Talent*, 76 N.C. App. 545, 553, 334 S.E.2d 256, 261-62 (1985) (savings account must be valued as of the date of separation without regard to amount in account at time of the trial); *Huguelet v. Huguelet*, 113 N.C. App. 533, 536, 439 S.E.2d 208, 210 (debt is marital if "incurred during the marriage and before the date of separation by either spouse or both spouses for the joint benefit of the parties"), *disc. rev. denied*, 336 N.C. 605, 447 S.E.2d 392 (1994). The spouse not receiving the distribution of the marital debt who makes some payment on the marital debt after the date of separation and before the equitable dis-

tribution trial is entitled to either (1) a reimbursement from the other spouse for the amount of the payment, (2) a credit to his share of the equitable distribution award in an amount equal to the payment, or (3) an upward adjustment in his percentage of the distribution of the marital properties. *Smith*, 111 N.C. App. at 510, 433 S.E.2d at 226. The trial court retains the discretion to choose the appropriate method of compensating the spouse for his post-separation payment of marital debt. *Id.*

### A

**[1]** In this case, the defendant argues that the trial court "did not distribute the [$9,000] marital debt to anyone." It is true that the judgment does not specifically indicate that the trial court distributed the $9,000 debt to anyone. It can be implied, however, that in placing a value on the Alleghany property of $19,250, when it in fact had a value of $28,250, and distributing that property to the plaintiff, the trial court also distributed the $9,000 debt to her.

### B

**[2]** The defendant further argues that the trial court èrred in treating the defendant's post-separation payment of the $9,000 as a distributional factor. We disagree. As we have stated, the trial court is given the discretion to treat the post-separation payment of a martial debt, by a spouse not receiving distribution of the debt, as a distributional factor. In so doing, the trial court did not abuse its discretion.

### C

**[3]** The defendant finally argues on this issue that because the debt was paid in full after the date of separation and before the date of the trial, the debt distributed to the plaintiff decreased in value and that decrease must be considered by the trial court as a distributional factor. We agree. It is fundamental that the trial court must consider the "value of the marital property [and debts] at the date of distribution because the post-separation appreciation [and depreciation] . . . is a distributional factor." *Haywood v. Haywood*, 106 N.C. App. 91, 96, 415 S.E.2d 565, 568 (1992), *rev'd in part*, 333 N.C. 342, 425 S.E.2d 696 (1993); *Smith*, 111 N.C. App. at 511-12, 433 S.E.2d at 227 (spouse's post-separation discharge of a second mortgage increased value of home and must be considered as a distributional factor). In this case, the marital debt which was distributed to plaintiff and valued at $9,000 on the date of separation had a value of zero on the date of distribution. The trial court was required to consider this fact as a dis-

LOVING v. LOVING

[118 N.C. App. 501 (1995)]

tributional factor in making its distribution, and there are no findings suggesting that it did. This error requires that the award be reversed and remanded for entry of a new judgment giving proper consideration to this evidence.

II

[4] Defendant also contends that the Midland property is, at least in part, defendant's own separate property. We disagree.

Under N.C. Gen. Stat. § 50-20(b)(1), (2),

[T]he party claiming the property to be marital must meet the burden of showing by a preponderance of the evidence that the property was acquired by either spouse or both spouses during the marriage, before the date of separation, and is presently owned. . . . Once that burden is met, the burden shifts to the party claiming the property to be separate property. The party must prove by a preponderance of the evidence that the property was acquired by bequest, descent or gift during the course of the marriage.

*Godley v. Godley*, 110 N.C. App. 99, 108, 429 S.E.2d 382, 388 (1993) (*citing* N.C.G.S. § 50-20(b)(1), (2) and *Atkins v. Atkins*, 102 N.C. App. 199, 401 S.E.2d 784 (1991)). As to whether property is marital or separate, the findings of the trial court will not be disturbed on appeal if there is competent evidence to support the findings. *Nix v. Nix*, 80 N.C. App. 110, 112-13, 341 S.E.2d 116, 118 (1986).

While conceding that plaintiff met her burden of showing the Midland property is marital property pursuant to Section 50-20(b)(1), defendant argues that at a minimum, the Midland property "was Defendant's separate property to the extent of the difference between the value of the property ($65,000) at the time of the gift and the value of the interest free loan ($21,000) or a $44,000 separate component in this land." Even assuming that any or all of the Midland property was acquired as a gift only to defendant from his parents and was therefore defendant's separate property, when the defendant directed that the title be placed in the entireties, a gift by the defendant to the marital estate is presumed. *McLean v. McLean*, 323 N.C. 543, 555, 374 S.E.2d 376, 383 (1988). "This presumption is rebuttable only by clear, cogent and convincing evidence that a gift was not intended." *Id.* " '[W]hether defendant succeeded in rebutting the presumption of gift to the marital estate by clear, cogent, and convincing evidence is a matter left to the trial court's discretion.' " *Id.* (*quoting McLean v.*

*McLean,* 88 N.C. App. 285, 290, 363 S.E.2d 95, 98-99 (1987)). In so holding, we reject the defendant's argument that the *McLean* presumption applies only when a spouse uses separate property to acquire other property which is titled in the entireties. The *McLean* presumption also applies when a spouse directs that title of his separate property be placed in the entireties, as was done in this case. As this Court has stated, "[w]hen one party titles property jointly it is reasonable that the other party expects it to be an addition to marital property." *McLeod v. McLeod,* 74 N.C. App. 144, 157, 327 S.E.2d 910, 919, *cert. denied,* 314 N.C. 331, 333 S.E.2d 488 (1985).

In this case, the defendant did not produce any evidence to rebut the presumption of a gift to the marital estate. Thus, the trial court did not err in finding defendant made a gift of his separate Midland property to the marital estate and in concluding the entire Midland property is marital property. For these reasons, the decision of the trial court is

Affirmed in part, reversed in part and remanded.

Judges LEWIS and MARTIN, MARK D., concur.