IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-626

No. COA21-734

Filed 20 September 2022

Union County, No. 18 CVD115

MELISSA MOSIELLO, Plaintiff,

v.

ANTHONY MOSIELLO, Defendant.

Appeal by defendant from judgment entered 28 June 2021 by Judge William F. Helms in Union County District Court. Heard in the Court of Appeals 24 August 2022.

*Leitner, Bragg & Griffin, PLLC, by Jordan M. Griffin, for plaintiff appellee.*

*Plumides, Romano & Johnson, PC, by Richard B. Johnson, for defendant-appellant.*

TYSON, Judge.

¶ 1        Anthony Mosiello ("Anthony") appeals from an order granting an unequal distribution of marital property to his ex-wife, Melissa Mosiello ("Melissa"). We affirm.

## I.        Background

¶ 2        Anthony and Melissa married on 4 September 1992. Both parties remained uncertain about the official date of separation during the equitable distribution

hearing. When the divorce hearing was held over one year later, the trial court found the parties had separated on 9 March 2009. The trial court entered a Judgment of Divorce on the same day as the divorce hearing, 5 April 2021. Melissa's claim for equitable distribution was heard on 10 March 2020. The trial court took the matter under advisement and entered a written order on 28 June 2021. The trial court concluded an unequal division would be equitable. Anthony filed a timely appeal.

## II.     Jurisdiction

This Court possesses appellate jurisdiction over equitable distribution orders "if the order or judgment would otherwise be a final order or judgment." N.C. Gen. Stat. § 50-19.1 (2021); *see also* N.C. Gen. Stat. § 7A-27(b)(2) (2021).

## III.     Issues

Anthony argues the trial court: (1) abused its discretion when determining whether an equal distribution of the marital estate was not equitable; (2) failed to rely on sufficient evidence to support its finding of facts; and, (3) prejudiced him by delaying entry of the order.

## IV.     Unequal Distribution of Marital Property

The trial court found an unequal distribution of marital property was equitable in this case. Anthony argues the trial court abused its discretion by distributing the most substantial marital asset, the marital home valued at $153,000, to Melissa.

### A. Standard of Review

¶ 6 Trial courts are accorded discretion when distributing marital property, and "the exercise of that discretion will not be disturbed in the absence of clear abuse." *McNeely v. McNeely*, 195 N.C. App. 705, 709, 673 S.E.2d 778, 781 (2009) (citation and quotations omitted). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). "Once the trial court decides that an unequal division of the marital property would be equitable, its decision will only be reversed for an abuse of discretion." *Albritton v. Albritton*, 109 N.C. App. 36, 42, 426 S.E.2d 80, 84 (1993) (citing *White*, 312 N.C. at 777, 324 S.E.2d at 833).

## B. Analysis

¶ 7 N.C. Gen. Stat. § 50-20 (2021) governs the distribution of marital and divisible property. "[E]quitable distribution is a three-step process requiring the trial court to (1) determine what is marital [and divisible] property; (2) find the net value of the property; and, (3) make an equitable distribution of that property." *Petty v. Petty*, 199 N.C. App. 192, 197, 680 S.E.2d 894, 898 (2009) (citations and quotations omitted).

¶ 8 Trial courts are mandated by statute to divide marital property equally "unless the court determines that an equal division is not equitable." N.C. Gen. Stat. § 50-20(c). If the trial court determines "an equal division is not equitable, the court shall divide the marital property and divisible property equitably" and "consider all of the

following factors under [N.C. Gen. Stat. § 50-20(c)(1)-(12)]." *Id.*; *see also White*, 312 N.C. at 776-77, 324 S.E.2d at 832-33 (explaining that "if no evidence is admitted tending to show that an equal division would be inequitable, the trial court must divide the marital property equally").

¶ 9        When determining whether an unequal distribution is equitable, the trial court must make written findings of fact demonstrating and adjudicating which relevant and admitted evidence supports the N.C. Gen. Stat. § 50-20(c) distributional factors the court considered. *Daetwyler v. Daetwyler*, 130 N.C. App. 246, 249, 502 S.E.2d 662, 665 (1998) (citation omitted). "The trial court need not make 'exhaustive' findings of the evidentiary facts, but must include the 'ultimate' facts considered." *Id.* (quoting *Armstrong v. Armstrong*, 322 N.C. 396, 405–06, 368 S.E.2d 595, 600 (1988)).

¶ 10        If a party presents evidence that an unequal distribution is not equitable under one or more of the N.C. Gen. Stat. § 50-20(c) factors, the trial court must exercise its discretion when assessing and adjudicating how much weight to give each factor. *White*, 312 N.C. at 776-77, 324 S.E.2d at 832-33 (explaining that when "evidence tending to show that an equal division of marital property would not be equitable is admitted, . . . the trial court must exercise its discretion in assigning the weight [accorded to] each factor"). "[T]he trial court is not required to show how it balanced the factors; the weight given to each factor is in the trial court's discretion; and there is no need to show exactly how the trial court arrived at its decision regarding unequal

division," but an appellate court must be able to review and conclude the statutory factors were followed. *Montague v. Montague*, 238 N.C. App. 61, 70-71, 767 S.E.2d 71, 78 (2014) (citation omitted).

¶ 11        "A single distributional factor may support an unequal division." *Mugno v. Mugno*, 205 N.C. App. 273, 278, 695 S.E.2d 495, 499 (2010) (citation omitted); *see also Leighow v. Leighow,* 120 N.C. App. 619, 463 S.E.2d 290 (1995) (finding three distributional factors in favor of one spouse supported an unequal distribution order). Our Supreme Court has held "a party's misconduct during the marriage which *dissipates or reduces the value* of the marital assets for non-marital purposes can be considered under [factor (12) of] N.C. Gen. Stat. § 50–20(c)(12) in determining whether equal would be equitable." *Coleman v. Coleman*, 89 N.C. App. 107, 109-110, 365 S.E.2d 178, 180 (1988) (citing *Smith v. Smith*, 314 N.C. 80, 81, 331 S.E.2d 682, 683 (1985)).

¶ 12        The trial court in *Albritton* relied on four of the twelve N.C. Gen. Stat. § 50-20(c) factors when deciding an equal distribution was not equitable. 109 N.C. App. at 42, 426 S.E.2d at 84. The trial court gave "particular weight" to evidence indicating the "plaintiff had secreted funds, attempted to devalue the marital estate and was less than truthful in much of her testimony," and also considered the "defendant's declining health and inability to work" important. *Id.* This Court held the trial court did not abuse its discretion because the decision was well reasoned and not arbitrary.

*Id.*

¶ 13   Here, the trial court reached a well-reasoned decision that was not arbitrary. The trial court considered the statutory factors and concluded an unequal distribution was equitable. The order reveals which N.C. Gen. Stat. § 50-20(c) factors the trial court weighed, although the court did not specifically label each factor.

¶ 14   The trial court considered factor (3), the duration of the marriage and the physical health of Melissa. N.C. Gen. Stat. § 50-20(c)(3). The trial court also appeared to heavily weigh Anthony's destructive acts, finding Anthony had "intentionally" set the marital home on fire and rendered the home "uninhabitable for at least six (6) months." Melissa paid for all subsequent repairs to the home and the increased insurance premiums resulting from the fire. These findings clearly align with factor (11a), which allows courts to consider the "[a]cts of either party to maintain, preserve, develop, or expand; or to *waste, neglect, devalue or convert the marital property* or divisible property, or both, during the period after separation of the parties and before the time of distribution." N.C. Gen. Stat. § 50-20(c)(11a) (emphasis supplied).

¶ 15   Those findings of fact also fall within factor (12) because trial courts may consider any action that "dissipates or reduces the value of the marital assets." *Smith*, 314 N.C. at 81, 331 S.E.2d at 683. Although Anthony may not agree with how the trial court weighed each factor, the trial court was not required to show how it balanced the factors or the exact weight given to each factor, as a prior panel of this

Court explained in *Montague,* 238 N.C. App. at 70-71, 767 S.E.2d at 78.

The trial court, vested with the discretion to determine how much weight to give each of the N.C. Gen. Stat. § 50-20(c) factors, concluded factors (3), (11a), and (12) favored an unequal distribution. A single N.C. Gen. Stat. § 50-20(c) distributional factor may support an unequal division, as explained in *Mugno.* Because the trial court's decision is not shown to be arbitrary, the trial court's decision should not be set aside and must be given deference.

## V. The Sufficiency of the Evidence

Anthony next argues several of the trial court's findings of fact are not supported by relevant admitted evidence. Anthony asserts four of the trial court's findings of fact do not comply with the statutory obligations governing the classification and valuation of marital property for equitable distribution orders.

## A. Standard of Review

Trial courts possess great discretion when distributing marital property, and this Court will only reverse an equitable distribution order if the trial court abused its discretion. *Albritton,* 109 N.C. App. at 42, 426 S.E.2d at 84 (citation omitted). "Accordingly, this Court will not reverse [a] trial court's findings of fact on appeal as long as they are supported by competent evidence." *Id.* (citation omitted); *see also Troutman v. Troutman,* 193 N.C. App. 395, 400-01, 667 S.E.2d 506, 510 (2008) (explaining a trial court's decision will not be overturned unless, "upon consideration

of the cold record . . . the division ordered by the trial court [ ] has resulted in an obvious miscarriage of justice") (citations and quotations omitted).

## B. Analysis

¶ 19     Trial courts must publish written findings of fact to support their conclusions of law to enable appellate courts to assess the record and determine whether the evidence admitted supports the findings of fact and the legal conclusions represent a correct application of the law. *Mrozek v. Mrozek*, 129 N.C. App. 43, 49-50, 496 S.E.2d 836, 841 (1998) (citation omitted). "This [obligation to provide written orders] only requires that the court make findings as to the ultimate rather than evidentiary facts. The trial court is not required to recite in detail the evidence it considered in determining what division is equitable." *Id.* at 50, 496 S.E.2d at 841 (citation and quotation omitted).

¶ 20     "[F]indings of fact are conclusive if they are supported by any competent evidence from the record." *Robinson v. Robinson*, 210 N.C. App. 319, 322, 707 S.E.2d 785, 789 (2011) (citations and quotations omitted). "[D]etermining the credibility of the evidence [is] the court's province as finder of the facts." *Nye v. Nye*, 100 N.C. App. 326, 327, 396 S.E.2d 91, 92 (1990) (explaining the trial court did not err when it determined defendant's stock had no value and would not appreciate—notwithstanding contrary evidence presented by the plaintiff—because the court "simply did not believe" the plaintiff's evidence). "This Court is not here to second-

guess values of marital and separate property where there is evidence to support the trial court's figures." *Mishler v. Mishler*, 90 N.C. App. 72, 74, 367 S.E.2d 385, 386 (1988).

¶ 21        As noted above, the distribution of martital property encompasses a three-step process: (1) the classification of property as marital or separate, (2) the assignment of value to the property, and (3) the distribution of the marital property. *Petty*, 199 N.C. App. at 197, 680 S.E.2d at 898 (citation omitted).

¶ 22        Marital property refers to "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties." N.C. Gen. Stat. § 50-20(b)(1) (2021). Divisible property encompasses the "appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution, *except that appreciation or diminution in value which is the result of postseparation actions or activities* of a spouse shall not be treated as divisible property." N.C. Gen. Stat. § 50-20(b)(4)(a) (emphasis supplied).

¶ 23        Once the trial court classifies property, N.C. Gen. Stat. § 50-21(b) specifies that marital property should "be valued as of the date of the separation," while divisible property is "valued as of the date of distribution." Courts should then use the "net value" of both marital and divisible property when distributing it amongst the parties. N.C. Gen. Stat. § 50-20(c). This Court has given "net value" its ordinary

meaning when applying N.C. Gen. Stat. § 50-20(c) and defined it as the "market value, if any, less the amount of any encumbrance serving to offset or reduce market value." *Alexander v. Alexander*, 68 N.C. App. 548, 550-51, 315 S.E.2d 772, 775 (1984).

¶ 24        While trial courts should make explicit findings regarding the net fair market value of property on the date of separation, a spouse is not necessarily prejudiced by the trial court's failure to state the net value of the property if it is easily ascertained by the trial court's findings, as explained in *Wall v. Wall*. 140 N.C. App. 303, 307, 536 S.E.2d 647, 649-50 (2000).

> Defendant does not question the accuracy of the trial court's findings, but argues that the trial court did not make an explicit finding about the net value of the marital home on 5 May 1988, the date of separation. However, the trial court found a gross fair market value on the date of separation of $186,000.00, subject to encumbrances of $132,136.71 and $17,753.20. Subtracting the encumbrances from the gross value of the home leaves a net fair market value on the date of separation of $36,110.09. While it would have been better practice for the trial court to make a specific finding as to the net fair market value of the dwelling house on the date of separation, such value can be easily calculated from its findings. . . . Though the net fair market value of the Walls' residence was not explicitly set out, it can be made certain from the facts found by the trial court.

*Id.* (citation omitted) (emphasis supplied).

¶ 25        Trial courts may rely on a variety of relevant evidence, including the lay opinions of testifying spouses, when assessing the value of property.

> Lay opinions as to the value of the property are admissible if the witness can show that he has knowledge of the property and some basis for his opinion. Unless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value. . . . Rather, an owner is deemed to have sufficient knowledge of the price paid for his land, the rents or other income received, and the possibilities of the land for use, and to have a reasonably good idea of what the land is worth.

*Hill v. Hill*, 244 N.C. App. 219, 229, 781 S.E.2d 29, 37 (2015) (citations and quotations omitted).

¶ 26    On appeal, this Court may consider whether the trial court's valuation of martital property fell "within the range of the plaintiff's and defendant's valuations." *Smith*, 104 N.C. App. at 792, 411 S.E.2d at 200. This Court has also held one party's valuation of property in an equitable distribution affidavit may support a finding of value. *See Lawing v. Lawing*, 81 N.C. App. 159, 163-64, 344 S.E.2d 100, 104 (1986) (finding the plaintiff's affidavit valuing the ring constituted competent value evidence, even though no other evidence was entered at trial and the defendant's affidavit included a conflicting value).

¶ 27    Claims regarding post-separation changes in the value of real property often center around how the misclassification of marital property affects each spouse's award when the property is divided *equally*. *See McLean v. McLean,* 88 N.C. App. 285, 293, 363 S.E.2d 95, 100 (1987) (stating this Court is required "to credit a former

spouse 'with at least the amount by which he decreased the principal owed' on marital debt by using his separate funds") (citation omitted).

¶ 28    If property is divided equally between spouses, but one spouse made post-separation payments towards marital property, the court must consider whether the spouse making the payments used marital funds and determine the value of those payments. *Smith*, 104 N.C. App. at 790-92, 411 S.E.2d at 199 (explaining the court committed error by failing to credit plaintiff for the "various taxes, insurance and reduction of principal as to marital property" plaintiff paid because, as a result, plaintiff received an *unequal* share despite the court's determination that an *equal* share was equitable).

¶ 29    Assessing the type of funds used to make the payment is important because, if a spouse used separate funds to benefit the marital estate, those payments may be credited to the payor when distributing the marital estate. *Loving v. Loving*, 118 N.C. App. 501, 505-06, 455 S.E.2d 885, 888 (1995) (explaining a spouse "who makes some payment on the marital debt after the date of separation and before the equitable distribution trial" should be awarded "either (1) a reimbursement from the other spouse for the amount of the payment, (2) a credit to his share of the equitable distribution award in an amount equal to the payment, or (3) an upward adjustment in his percentage of the distribution of the marital properties"). Although a spouse may sometimes be credited for the other spouse's exclusive post-separation use of the

marital residence, the trial court may also balance such use and adjust if the spouse residing in the home is separately "forced to expend considerable sums to repair and maintain [it]." *Leighow*, 120 N.C. App. at 622, 463 S.E.2d at 292.

¶ 30          Anthony argues four of the trial court's findings of fact do not properly comply with the trial court's obligations under N.C. Gen. Stat. §§ 50-20, 50-21. We address each of the contested findings of fact in turn.

### 1. Value of the Home

¶ 31          Anthony contends the trial court committed three errors when valuating the marital home at $153,000. First, Anthony argues the $153,000 evaluation of the house was not supported by competent evidence because several conflicting values of the marital residence were offered at trial. Next, Anthony asserts the trial court did not consider whether post-separation changes in the value of the marital property constituted divisible property. Lastly, Anthony argues the trial court did not value the property as of the date of separation. Anthony's arguments are without merit.

¶ 32          At trial, Melissa offered evidence regarding the value of the home. Melissa testified to the tax value of the property per the Union County tax records, which listed two tax evaluations for 2019 ($143,000 and $157,000). Melissa also testified regarding the current mortgage balance in 2019 (approximately $7,000) and the mortgage balance when Anthony initially left the marital residence ($17,000). Melissa's equitable distribution affidavit included the value of the land ($140,000),

the value of the attached home ($30,000), and the encumbrances on the land ($17,000).

¶ 33        The trial court's valuing the land and improvements at $153,000 is supported by relevant admitted evidence.  Like in *Wall*, subtracting the $17,000 encumbrances from the $170,000 gross value of the marital residence nets fair market value on the date of separation of $153,000.  The fair net market value can be made certain by the findings of fact.  This value rests within the range of the evidence entered at trial, as explained in *Smith*, and is supported by more evidence than the sole affidavit as in *Lawing*. 81 N.C. App. at 165, 344 S.E.2d at 105 ("One of our roles in reviewing findings of fact is to reconcile apparently inconsistent findings and uphold the judgment when practicable.").

¶ 34        Next, the trial did not err by failing to consider the post-separation changes of value in the property as divisible because any appreciation or diminution was "the result of postseparation actions or activities" of Melissa. N.C. Gen. Stat. § 50-20(b)(4)(a).  Anthony does not contend Melissa used marital funds to pay off the encumbrances, nor does Anthony dispute the findings of fact listing all the postseparation actions and activities of Melissa.  Unlike in *Smith*, the trial court found an *unequal* distribution of the marital residence was equitable, so any failure to quantify post-separation improvements to the marital residence did not harm Anthony. *Id.*

¶ 35        Lastly, the trial court's findings of fact regarding the date of separation is supported by competent evidence. Both parties presented conflicting evidence about the date of separation, offering three different years of separation (9 March 2009, 10 March 2010, and 1 January 2012). While the Judgment of Divorce, entered 5 April 2021, ultimately concluded the parties separated on 9 March 2009, Melissa explained she used 1 January 2012 on the Equitable Distribution Affidavit because Anthony had left North Carolina and moved to New York, and had stopped coming by the home. The finding was supported by competent evidence in the record. Anthony cannot show an abuse of the court's discretion.

## 2. *Value of the Cars*

¶ 36        Plaintiff testified to the Kelley Blue Book values of two cars in Anthony's possession: "At the time [Anthony left the home] the Cougar was valued at $4000 in the Blue Kelley Book, and the Lincoln was valued at $2000." Anthony offered no evidence regarding the value of the cars and did not submit an Equitable Distribution Affidavit. The trial court's finding of facts regarding the value of the cars was supported by competent evidence, the lay opinion of Melissa, who is allowed to testify to the value of property under *Hill*. 244 N.C. App. at 229, 781 S.E.2d at 37.

## 3. *Actions of the Defendant*

¶ 37        Anthony contends the trial court's finding of fact that Anthony "intentionally" set the house on fire is not supported by the weight of the evidence. Melissa testified

how her daughter witnessed Anthony "go into the home with a gasoline jug and rag, take all [her] belongings, put them [into] the bedroom . . . and light the house on fire." Melissa also stated their daughter told police Anthony held the daughter down when she was "trying to put the fire out with a pot of water." Melissa faced increased insurance premiums because the fire was set intentionally. Anthony denied setting the house on fire, asserting the pictures entered into evidence at trial depicted him "outside doing fire on red ants."

¶ 38      After hearing the evidence and assessing the witnesses' credibility, the trial court did not abuse its discretion by finding Anthony set the fire intentionally. The trial court may properly consider evidence regarding marital conduct that "dissipates or reduces the value of the marital assets," per *Smith*. 314 N.C. at 81, 331 S.E.2d at 683.

### 4. *The Length of the Marriage*

¶ 39      Anthony's argument regarding the trial court's finding of fact detailing the length of the marriage mirrors Anthony's argument regarding the date of separation. For the same reasons detailed above, we disagree. This argument is without merit.

## VI.      Prejudicial Delay

¶ 40      Anthony contends the trial court prejudiced Anthony by entering the order fifteen months after the equitable distribution hearing. We disagree.

### A. Standard of Review

¶ 41        As Anthony correctly notes, this Court in *Wall* established a "case-by-case inquiry as opposed to a bright line rule [must] determin[e] whether the length of a delay is prejudicial." *Britt v. Britt*, 168 N.C. App. 198, 202, 606 S.E.2d 910, 912 (2005) (citing *Wall*, 140 N.C. App. at 314, 536 S.E.2d at 654); *see also Nicks v. Nicks*, 241 N.C. App. 487, 510, 774 S.E.2d 365, 381 (2015).

## B. Analysis

¶ 42        This Court has declined to reverse late-entered equitable distribution orders when the complaining party is not prejudiced by the delay. *Britt,* 168 N.C. App. at 202, 606 S.E.2d at 912.  In *Britt*, a sixteen-month delay between an equitable-distribution hearing and the equitable-distribution order did not warrant reversing the trial court's order and entry of a new one. *Id.*  The court found no "potential changes in the value of marital or divisible property between the hearing and entry of the equitable distribution order [to] warrant[ ] additional consideration by the trial court." *Id.*  The marital home, which was sold before the hearing, "was the most significant item of property distributed" and its value would "not change for the purposes of equitably distributing the parties' marital property." *Id*. at 202, 606 S.E.2d at 912-13.

¶ 43        Anthony's argument fails to assert how he was harmed by the delay.  Like in *Britt*, Anthony and Melissa's most significant marital asset was the marital residence.  Any changes in the value of the residence between the hearing and the

entry of the order did not harm Anthony because the trial court distributed the entirety of the marital residence to Melissa. Finally, the delay in this case was slightly shorter than the sixteen-month delay in *Britt*. Any delay did not prejudice Anthony.

## VII. Conclusion

The trial court's findings of fact are supported by admitted and competent evidence in the record. Those findings support the conclusions of law that an unequal distribution of the parties' martital assets is equitable. Anthony has failed to show any abuse of discretion or prejudice in the trial court's equitable distribution order. The order appealed from in affirmed. *It is so ordered.*

AFFIRMED.

Judges ARROWOOD and GRIFFIN CONCUR.