BOYUM, Chief Justice.
The defendant appeals from the order of equitable distribution of May 27, 2007. The appellee has not filed a brief in this appeal. The parties did not own real property. They are both tribal members and this controversy falls within the jurisdiction of the court. It is an equitable distribution case of first impression for this Court, with two issues to be determined:
1) Did the trial court err in finding that the mobile home and furniture purchased by appellant with funds from her per capita distributions were marital property subject to equitable distribution?
2) Specifically, did the trial court err in refusing to grant the wife possession and ownership of the automobile?
We hold that the trial court erred in its determination that those items were marital property.
Jessica Queen, then age 18, married Robbie Squirrel on February 2nd of 2006. She obtained her GED in June of 2006 and received her minor’s trust fund distribution (commonly called a “big per cap”) oí' *423 $47,000 in August of 2006. She then began receiving her bi-annual per capita distribution. Squirrel also received his biannual per capita payments. Both parties essentially lived off Ms. Queen’s big per capita and their bi-annual per capita payments, charity from family members and some very meager earnings from Squirrel during the marriage. (R. at 42, 43.) The couple separated on January 10th or 11th of 2007, (R. at 48), and the marriage officially ended in May of 2007.
Ms. Queen deposited her big per capita payment in a bank account that she originally intended to place in a separate account, but after an argument with her husband, eventually opened in both their names. (R. at 45.) This was confirmed by Squirrel’s testimony. (R. at 35.) Her big per capita money was used primarily to purchase a mobile home for $19,500, (R. at 14), and other items such as the furniture listed in her affidavit. (R. at 17.) She also used her big per cap to pay the $2,000 down payment on the automobile and paid the rest of the $4,500 purchase price out of one of her bi-annual per capita payments. (R. at 18, 22.) There is no evidence in the record concerning her intent to give any of these items to the marriage, (R. at 48), but she did testify specifically that she did not intend that the car be a gift to the marriage, (R. at 18), and that it was titled in a third person’s name. (R. at 19.) She testified that although she did not have a driver’s license, she was pregnant and needed the car to get her to and from the hospital. (R. at 18.)
Ms. Queen was never specifically asked, nor did she volunteer, whether she intended the remaining purchases to be gifts to the marriage. There was some contradictory testimony where she admitted that her purchases were for both of them, their child and their marriage’s benefit. (R. at 55.) She also testified that the trailer was purchased from Squirrel’s uncle, titled in Mr. Squirrel’s cousin’s name and placed on property leased by Squirrel but owned by Squirrel’s grandpa. (R. at 14, 15, 33.) Ms. Queen testified that Squirrel took monies out of their joint account and that she then retrieved the money from him and put it in a new account solely in her name. (R. at 26, 48.) She also testified that Mr. Squirrel never deposited any money into the joint account (R. at 20.) Additionally, there was conflicting testimony about her intention concerning some $10,000 in cash that was used by Squirrel to purchase personal items, such as clothing. (R. at 50.)
Cherokee Code (hereinafter C.C.) § 50-11, Property Distribution, applies here and states that “[ejither former spouse may file an action in the Cherokee court seeking equitable distribution of personal property and real property, owned or acquired jointly by the parties during the marriage.” (emphasis added) Common usage of “acquired” means “[t]o gain possession of’ or “[t]o get by one’s own efforts” and will guide us in the initial determination. The American Heritage Dictionary (2nd College Ed.1985). The Cherokee Code does not define the phrase “owned ... jointly by the parties during the marriage”, so the Court must look to North Carolina law for guidance. C.C. § 50-13. North Carolina’s Equitable Distribution Act and surrounding case law provide 30 years worth of guidance.
The first determination to be made is whether the per capita payments received by defendant appellant were “acquired jointly during the marriage.” Tribal per capita payments represent 50% of the distributable net revenue from Class XI and Class III gaming activities of Harrah’s Casino under a compact with the State of North Carolina that has been approved by the Secretary of the Interior under 25 *424 U.S.C. § 2710(b)(3). C.C. § 16-1.08(b). A per capita payment is paid to each enrolled member who is otherwise not disqualified under C.C. § 16C-4(b) of the Tribal Gaming Ordinance.
Per capita payments are made biannually to all tribal members but the payments designated for minors are placed in a Minors Trust Fund, as defined in C.C. § 16C-2, which is then supervised by an Investment Committee, under C.C. § 16C-6. These monies are placed in a trust and the principal, plus any passive appreciation in the form of earned interest or dividend, is kept until a triggering event leads to distribution to the minor. Unless this money is advanced to the minor for education or health care, it is distributed when an enrolled member reaches the age of 18, if they have obtained their high school diploma or GED, or age 21 if not. C.C. § 16C~6(5)(A). This one time distribution of the full amount of the Minors Trust Fund is commonly referred to as the “big per capita”, which occurs at the end of a calendar quarter following a triggering event. C.C. § 16C-6(h). Following the disbursement of the “big per capita”, an individual then begins to receive the biannual payments in an amount identical to that received by every adult tribal member. We hold that per capita payments are not acquired jointly during the marriage.
The question then turns on whether the personal property purchased with per capita monies came to be “owned ... jointly” and thus converted into marital property. This determination depends upon the presence or absence of donative intent as shown by the totality of the circumstances. N.C.G.S. § 50-20(b)(2) states that “[p]roperty acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance”, and there is no evidence here that these transfers should be considered to be gifts. There was no testimony that they were acquired for a birthday, Milner v. Littlejohn, 126 N.C.App. 184, 187, 484 S.E.2d 453, disc. review denied, 347 N.C. 268, 493 S.E.2d 458 (1997), involved transfer of real property to tenants by the entirety, McLean v. McLean, 88 N.C.App. 285, 289, 363 S.E.2d 95 (1987), aff'd by 323 N.C. 543, 374 S.E.2d 376 (1988), or any language indicating a desire to make a gift. Additionally, appellee has contributed absolutely nothing to any of the purchases so under the source of funds theory, the marital estate would be entitled to the same proportion. Wade v. Wade, 72 N.C.App. 372, 382, 325 S.E.2d 260, review denied, 313 N.C. 612, 330 S.E.2d 616 (1985). Later cases, in recognizing this theory, note that it “dictate[s] that each party retain as separate property the amount he or she contributed to the down payment....” McLeod v. McLeod, 74 N.C.App. 144, 154, 327 S.E.2d 910, cert. denied, 314 N.C. 331, 333 S.E.2d 488 (1985). Indeed, the plain language of Section 50—20(b)(2) indicates that “[p]ropertv acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance.”
This Court holds that the per capita funds received by members of the EBCI are the separate property of the recipient, whether married or single. Per capita funds deposited by a recipient in a joint account of recipient and spouse remain separate property. When a married person uses their per capita money to purchase property, the issue of whether the purchased property is separate or marital property depends upon all the circum *425 stances surrounding the purchase and use of the property.
We hold that the trial court erred in holding that the car purchased by defendant Queen was marital property. It is clear that per capita payments received by members of the Eastern Band of Cherokee Indians are the separate property of the recipient. Queen used only her per capita funds to pay for the car and she testified that she did not intend it to be a gift to the marriage. The automobile was to be used by her to go to and from the hospital during her pregnancy. The automobile is Queen’s separate property and not subject to equitable distribution.
The trial court also erred in holding that the trailer and furniture purchased by Queen was marital property. Both parties agree that Queen paid for the trailer and the furniture listed in appellant’s affidavit entirely with her per capita funds. No contrary intention to convert it to marital property was clearly shown by appellee so that property remained as separate property for equitable distribution purposes.
For the foregoing reasons, the decision of the trial court of May 27, 2007 is reversed as to the mobile home, the furniture and the automobile. This case is remanded to the Cherokee Court.