McGEE, Chief Judge.
 

 *222
 
 Plaintiff Charles Jeffrey Hill ("Husband") appeals from an amended judgment ordering the unequal division of the marital estate that Husband shares with Defendant Dawn Sanderson Hill ("Wife"). We affirm the judgment in part, and vacate and remand in part.
 

 *33
 
 I.
 
 Facts and Procedural History
 

 Husband and Wife (collectively "the parties") were married on 3 August 1996, separated on 6 July 2009, and divorced on 8 September 2010. Two children ("the children") were born during the course of the marriage; one child in 2003 and one child in 2007. Husband filed a complaint on 19 August 2009 seeking custody of the children and equitable distribution of marital property. Wife answered and counterclaimed for child custody, child support, post-separation support, alimony, equitable distribution, and attorney's fees. The parties stipulated to the classification, valuation, and distribution of certain enumerated marital assets, and the trial court entered its judgment on equitable distribution on 5 March 2012.
 

 This Court considered Husband's appeal from the trial court's 5 March 2012 judgment on equitable distribution in
 
 Hill v. Hill
 
 (
 
 Hill I
 
 ),
 
 229 N.C.App. 511
 
 ,
 
 748 S.E.2d 352
 
 (2013). In
 
 Hill I,
 
 this Court vacated portions of the trial court's 5 March 2012 judgment on equitable distribution after determining that the trial court "erred in failing to classify property, in the valuation of property, and in considering a distributional factor that was based on an erroneous finding."
 
 Hill I,
 

 229 N.C.App. at 513
 
 ,
 
 748 S.E.2d at 355
 
 .
 

 Upon remand from this Court, the trial court recognized that it was to consider the following issues:
 

 (1) classify the corporation as marital or separate property and distribute the corporation as well as the dividend[;] (2)classify the equity line as marital, separate or mixed and distribute marital portion, if any[;] (3) determine the amount of post separation payments and classify as divisible property[;] (4) distribute the credit card debt[;] (5) classify, value and distribute the vehicles and bank accounts[;] (6) determine the distributional factors and determine if unequal division is equitable[;] (7) determine the fair market value of undeveloped lots[;] (8) determine the fair market value of marital residence[; and] (9) determine the net value of the marital estate and percentages to each party[.]
 

 *223
 
 After hearing the matter on 25 July 2014, the trial court entered an amended equitable distribution judgment on 11 September 2014 in which the trial court concluded that an unequal division of the marital estate was equitable, and distributed twenty-five percent of the marital estate to Husband and seventy-five percent of the marital estate to Wife. The trial court ordered Husband to pay Wife a distributive award in the amount of $20,968.63. Husband appeals.
 

 II.
 
 Standard of Review
 

 "Upon application of a party for an equitable distribution, the trial court shall determine what is the marital property and shall provide for an equitable distribution of the marital property ... in accordance with the provisions of [ N.C. Gen.Stat. § 50-20 ]."
 
 Smith v. Smith,
 

 111 N.C.App. 460
 
 , 470,
 
 433 S.E.2d 196
 
 , 202 (1993) (omission and alteration in original) (internal quotation marks omitted),
 
 rev'd in part on other grounds,
 

 336 N.C. 575
 
 ,
 
 444 S.E.2d 420
 
 (1994). "In so doing, the court must conduct a three-step analysis."
 

 Id.
 

 "First, the court must identify and classify all property as marital[, divisible,] or separate based upon the evidence presented regarding the nature of the asset."
 
 Id.;
 

 see also
 

 Brackney v. Brackney,
 

 199 N.C.App. 375
 
 , 381,
 
 682 S.E.2d 401
 
 , 405 (2009) (providing that the first step of equitable distribution is for the trial court to "classify property as being marital, divisible, or separate property"). "Second, the court must determine the net value of the marital [and divisible] property as of the date of the parties' separation, with net value being market value, if any, less the amount of any encumbrances."
 
 Smith,
 

 111 N.C.App. at 470
 
 ,
 
 433 S.E.2d at 202
 
 . "Third, the court must distribute the marital [and divisible] property in an equitable manner."
 
 Id.
 
 at 470,
 
 433 S.E.2d at 203
 
 .
 

 "The first step of the equitable distribution process requires the trial court to classify
 
 all
 
 of the marital and divisible property-collectively termed distributable property-in order that a reviewing court may reasonably determine whether the distribution ordered is equitable."
 
 Hill I,
 

 229 N.C.App. at 516
 
 ,
 
 748 S.E.2d at 357
 
 (internal quotation marks omitted). "[T]o enter a proper equitable distribution judgment, the
 
 *34
 
 trial court must specifically and particularly
 
 classify and value all assets and debts maintained by the parties at the date of separation.
 
 "
 
 Id.
 
 at 516,
 
 748 S.E.2d at 357
 
 (internal quotation marks omitted). "In determining the value of the property, the trial court must consider the property's market value, if any, less the amount of any encumbrance serving to offset or reduce the market value."
 
 Id.
 
 at 516,
 
 748 S.E.2d at 357
 
 (internal quotation marks omitted). "Furthermore, in doing all these things the court must be specific and detailed enough to enable a reviewing court
 
 *224
 
 to determine what was done and its correctness."
 
 iD.
 
 at 516, 748 S.E.2D at 357 (internal quotation marks omitted).
 

 "A trial court's determination that specific property is to be characterized as marital, divisible, or separate property will not be disturbed on appeal if there is competent evidence to support the determination."
 
 Brackney,
 

 199 N.C.App. at 381
 
 ,
 
 682 S.E.2d at 405
 
 (internal quotation marks omitted). "The mere existence of conflicting evidence or discrepancies in evidence will not justify reversal."
 
 Lawing v. Lawing,
 

 81 N.C.App. 159
 
 , 163,
 
 344 S.E.2d 100
 
 , 104 (1986). "Ultimately, the court's equitable distribution award is reviewed for an abuse of discretion and will be reversed only upon a showing that it [is] so arbitrary that it could not have been the result of a reasoned decision."
 
 Brackney,
 

 199 N.C.App. at 381
 
 ,
 
 682 S.E.2d at 405
 
 (internal quotation marks omitted);
 
 see also
 

 Wiencek-Adams v. Adams,
 

 331 N.C. 688
 
 , 691,
 
 417 S.E.2d 449
 
 , 451 (1992) ("Only a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry, or a finding that the trial judge failed to comply with [ N.C. Gen.Stat. § 50-20(c) ] will establish an abuse of discretion." (citations omitted)).
 

 III.
 
 Arguments
 

 A.
 
 Equity Line Debt
 

 Husband first contends the trial court erred by classifying $25,000.00 of the equity line debt-valued at $42,505.10 as of the date of separation-as Husband's separate debt. We agree.
 

 In
 
 Hill I,
 
 this Court recognized that "[t]he parties had stipulated that there was a Wachovia (now Wells Fargo) equity line debt, secured by [Husband's] separate real property, of $42,505.10 [at] the date of separation. The parties did not stipulate to the classification of this debt."
 
 Hill I,
 

 229 N.C.App. at 520
 
 ,
 
 748 S.E.2d at 359
 
 . Because "[t]he trial court's findings seem[ed] to indicate that to some extent the equity line debt was incurred as [Husband's] separate debt (for [a] vehicle purchase prior to the marriage), and to some extent for marital purposes,"
 
 id.
 
 at 520,
 
 748 S.E.2d at 359
 
 , this Court vacated the portion of the 5 March 2012 judgment pertaining to the equity line debt with instructions that, on remand, the trial court should "determine whether this was a marital debt, a separate debt, or partially marital and partially separate."
 
 Id.
 
 at 521,
 
 748 S.E.2d at 360
 
 .
 

 Upon remand, the trial court made the following findings with respect to the equity line debt:
 

 *225
 
 57. The parties have an equity line with a balance as of the date of separation of the parties of $42,505.10. This equity line is secured by the separate real property of [Husband] located in Burke County, NC. The parties have stipulated to this finding of fact.
 

 58. The equity line was opened in July 1996 with First Union Bank and only in the name of [Husband]. The notation for the first check written on the equity line was for a 1994 Ford Explorer vehicle purchased by [Husband]. This was prior to the marriage of the parties and thus the separate debt of [Husband].
 

 59. The equity line was modified to increase it to $35,000.00 in 1999 with First Union Bank. This modification was only in the name of [Husband]. There was no competent evidence that the equity line with First Union for $35,000.00 was paid off but only that it was transferred or rolled into the current equity line with Wachovia that is now Wells Fargo. The $25,000.00 equity line opened in 1996 was satisfied on June 27, 2000.
 

 *35
 
 60. .... In 2003, the parties established an equity line for $100,000.00 and at the date of separation of the parties the balance was $42,505.10....
 

 61. With the exception of the $25,000.00 equity line, and the modification to $35,000.00 of said equity line, all of the debts related to the equity line were incurred for the benefit of the parties' marriage to purchase various real properties or improve the properties....
 

 62. The equity line is a mixed asset with $25,000.00 attributed to the separate debt of [Husband]. The marital portion of the equity line is the remaining balance as of the date of separation, $42,505.10 minus $25,000.00, or $17,505.10.
 

 After considering Husband's and Wife's respective post-separation payments on the equity line debt as distributional factors, the trial court then distributed the marital portion of the debt to Husband.
 

 There is competent evidence in the record to support the trial court's finding that the $25,000.00 equity line debt, opened in July 1996, was
 
 *226
 
 Husband's separate debt, since it was incurred in Husband's name and was secured by Husband's separately-owned Burke County real property prior to the marriage of the parties in August 1996. "Separate property" is "all real and personal property acquired by a spouse
 
 before
 
 marriage." N.C. Gen.Stat. § 50-20(b)(2) (2013) (emphasis added). Since there is no dispute that the 1996 equity line debt was incurred prior to the marriage, Husband's protestations that such debt should have been classified as marital because this equity line was opened when the parties were living together and was used to purchase a vehicle that was used during the marriage are not relevant to the trial court's determination.
 

 There was also competent evidence in the record to support the trial court's findings that: the $25,000.00 equity line opened in 1996 was satisfied on 31 May 2000; that Husband and Wife together established an equity line with Wachovia, now Wells Fargo, for $100,000.00 in September 2003, which was secured by the same Burke County real property that secured the then-satisfied $25,000.00 equity line; and that, per the parties' stipulation, the balance on the $100,000.00 equity line established in 2003 was $42,505.10 as of the date of separation.
 

 However, in apparent contradiction to its finding that the $25,000.00 equity line was satisfied in 2000, the trial court further found that $25,000.00 of the $42,505.10 balance on the equity line debt was attributable to Husband's separate debt. Nonetheless, this Court has previously determined that "[a] reduction in the separate debt of a party to a marriage, caused by the expenditure of marital funds, is, in the absence of an agreement to repay the marital estate, neither an asset nor a debt of the marital estate."
 
 Adams v. Adams,
 

 115 N.C.App. 168
 
 , 170,
 
 443 S.E.2d 780
 
 , 781 (1994). Since the trial court found that Husband's separate debt from the 1996 equity line in the original amount of $25,000.00 was satisfied during the course of the marriage, and since there was no indication in the record that there was any agreement between the parties that Husband was to repay that satisfaction amount to the marital estate, if Husband's then-satisfied equity line debt of $25,000.00 was to be considered by the trial court, it could only have been properly considered as a distributional factor within the context of N.C. Gen.Stat. § 50-20(c)(12).
 
 See
 

 Adams,
 

 115 N.C.App. at 170
 
 ,
 
 443 S.E.2d at 781
 
 .
 

 The trial court also found that the original $25,000.00 equity line was increased to $35,000.00 in 1999 "only in the name of [Husband]," and that there was "no competent evidence that the equity line ... for $35,000.00 was paid off but only that it was transferred or rolled into the current equity line with Wachovia that is now Wells Fargo." Since the Certificate of Satisfaction in the record indicates that the amount of the equity line
 
 *227
 
 debt satisfied in 2000 was $25,000.00, the evidence in the record did not support the trial court's finding that the $35,000.00 equity line debt, in its entirety, was " transferred or rolled into the current [$100,000.00] equity line." Therefore, we vacate the portion of the trial court's judgment pertaining to the equity line debt, and remand this matter for the trial court to reconsider its
 
 *36
 
 Findings of Fact 59, 61, and 62 in light of the evidence presented, and to classify, value, and distribute the equity line debt in accordance with its findings.
 

 B.
 
 Corporate Income
 

 The trial court found, and Husband does not dispute, that the parties "stipulated that the corporate dividends for 2009 and 2010 of $35,000.00 for Speaking Of, Inc., [we]re marital property and that said dividends [we]re distributed to [Wife]." However, Husband contends there was no competent evidence to support Finding of Fact 68, in which the trial court found as follows: "In 2011 to the current date, [Wife] continued to singly operate Speaking Of, Inc., and is the sole stockholder for said corporation. Beginning in 2011, to the current date, [Wife] earned income as an officer of the corporation and did not have stock dividends." Husband asserts evidence was presented that Speaking Of, Inc. ("the corporation") continued to "earn dividends" post-separation in the amount of $38,052.00 in 2011, $39,136.00 in 2012, and $37,948.00 in 2013, that these amounts were paid to Wife as "non-salary distributions," and that these corporate earnings from 2011 through 2013 were not classified or properly distributed by the trial court.
 

 Profits of a Subchapter S corporation, referred to as "retained earnings," are "owned by the corporation, not by the shareholders."
 
 Allen v. Allen,
 

 168 N.C.App. 368
 
 , 375,
 
 607 S.E.2d 331
 
 , 336 (2005). However, for a Subchapter S corporation, "net taxable income [is] passed along to the shareholders in proportion to their respective stock interests, and the [c]ompany [is not] required to pay corporate income tax."
 
 See
 

 Crowder Constr. Co. v. Kiser,
 

 134 N.C.App. 190
 
 , 194,
 
 517 S.E.2d 178
 
 , 182,
 
 disc. review denied,
 

 351 N.C. 101
 
 ,
 
 541 S.E.2d 142
 
 (1999). Instead, "[i]ncome tax is paid by the shareholders, rather than the corporation, and income is
 
 allocated
 
 to shareholders based upon their proportionate ownership of stock."
 
 Allen,
 

 168 N.C.App. at 375
 
 ,
 
 607 S.E.2d at 336
 
 (emphasis added). Nevertheless, "retained earnings of a corporation are not marital property until
 
 distributed
 
 to the shareholders,"
 

 id.
 

 (emphasis added), and "funds received after [a] separation may appropriately be considered as marital property when the right to receive those funds was acquired during the marriage and before the separation."
 

 Id.
 

 at 374
 
 ,
 
 607 S.E.2d at 335
 
 .
 

 *228
 
 In
 
 Hill I,
 
 this Court considered whether the trial court erred by failing to classify two distributions from the corporation to Wife in 2009 and 2010 as marital property.
 
 Hill I,
 

 229 N.C.App. at 518
 
 ,
 
 748 S.E.2d at 358
 
 . Although the record before this Court in
 
 Hill I
 
 did not include the corporation's articles of incorporation, amendments to the articles, stock certificates, or corporate tax returns that were admitted as Husband's exhibits,
 
 id.
 
 at 517,
 
 748 S.E.2d at 357
 
 , the record reflected that " [i]ncome for the corporation was created by the work of [Wife] as a speech pathologist," and that this income was distributed to Wife by the corporation in the following two ways: first, Wife was paid a small salary; and second, Wife received a larger non-salary distribution, which was not subject to withholding taxes.
 
 Id.
 
 at 518,
 
 748 S.E.2d at 358
 
 . Based upon this evidence, the trial court found that "certain distributions" included on the corporation's tax returns were "
 
 not dividends but
 
 merely reflect[ed] the corporation's
 
 method of paying a salary
 
 to the officer of the corporation,"
 
 id.
 
 at 518-19,
 
 748 S.E.2d at 358
 
 (emphases added) (internal quotation marks omitted), where Wife "received a small amount of income as wages, and the balance as a distribution to her without tax withholding."
 
 Id.
 
 at 519,
 
 748 S.E.2d at 358
 
 (internal quotation marks omitted). Nevertheless, this Court determined that, if the trial court concluded upon remand that the corporation was a marital asset, this finding was in error because the trial court " recharacterized a shareholder distribution as salary to [Wife],"
 
 id.
 
 at 519,
 
 748 S.E.2d at 358
 
 , and the parties were "bound by their established methods of operating the corporation," since the shareholder distributions were used to "avoid payment of federal withholding taxes."
 
 Id.
 
 at 519,
 
 748 S.E.2d at 358
 
 . Thus, since "[t]he retained earnings of a Subchapter S corporation, upon distribution to shareholders, are marital property," this Court, in
 
 Hill I,
 
 determined that, if the corporation was marital, the $35,000.00 in distributions
 
 *37
 
 "would be marital property," but instructed that the trial court could "consider how this income was generated as a distributional factor" under N.C. Gen.Stat. § 50-20(c)(1) and (12).
 
 iD.
 
 at 519, 748 s.E.2D at 358.
 

 In the present case, the record before us includes the corporation's income tax returns for the calendar years 2011, 2012, and 2013, as well as Wife's individual tax returns for those same years. Each corporate tax return in the record indicates that Wife owns 100% of the stock in the corporation. The corporation's ordinary business income for 2011, 2012, and 2013 was $38,052.00, $39,136.00, and $37,948.00, respectively. Wife's individual tax returns for those same years indicate that the same amounts were reported by Wife as nonpassive income from the corporation. However, neither the corporation's tax returns nor Wife's tax returns for those years indicate that the corporation issued dividends or
 
 *229
 
 other distributions to Wife, or that Wife received any dividends or salary from the corporation. In other words, based on the evidence in the record before us, the amounts claimed as nonpassive income by Wife, who was the sole shareholder for the corporation in 2011, 2012, and 2013, remain retained earnings in the corporation and have not been distributed as earned income to Wife as an officer of the corporation. The evidence also supports the trial court's finding that Wife did not receive stock dividends in 2011, 2012, and 2013. Since "retained earnings of a[n S] corporation are not marital property until
 
 distributed
 
 to the shareholders,"
 
 see
 

 Allen,
 

 168 N.C.App. at 375
 
 ,
 
 607 S.E.2d at 336
 
 (emphasis added), and the evidence in the record before us does not indicate that the corporation's retained earnings were distributed to Wife in 2011, 2012, or 2013, we conclude that the trial court erred by finding that Wife "earned income as an officer of the corporation" beginning in 2011, but did not err by failing to classify and distribute the $115,136.00 earned by the corporation, since those earnings are still held by the corporation and so are not marital property.
 

 C.
 
 The Fairway Drive Property
 

 Husband next contends the trial court's finding of fact regarding the valuation of the undeveloped lot located on Fairway Drive in Weaverville, North Carolina, ("the Fairway Drive property"), which the parties stipulated was marital property, was not supported by the evidence presented. Specifically, Husband asserts there was no competent evidence to support the trial court's finding that the fair market value of the Fairway Drive property as of the date of separation was $45,000.00. We agree.
 

 "[L]ay opinions as to the value of the property are admissible if the witness can show that he has knowledge of the property and some basis for his opinion."
 
 Finney v. Finney,
 

 225 N.C.App. 13
 
 , 16,
 
 736 S.E.2d 639
 
 , 642 (2013) (internal quotation marks omitted). "Unless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value."
 
 Goodson v. Goodson,
 

 145 N.C.App. 356
 
 , 361,
 
 551 S.E.2d 200
 
 , 204 (2001) (internal quotation marks omitted). "[T]here is no requirement that an owner be familiar with nearby land values in order to testify to the fair market value of his own property."
 
 Id.
 
 at 361,
 
 551 S.E.2d at 205
 
 . "Rather, an owner is deemed to have sufficient knowledge of the price paid [for his land], the rents or other income received, and the possibilities of the land for use, [and] to have a reasonably good idea of what [the land] is worth."
 

 Id.
 

 (alterations in original) (internal quotation marks omitted).
 

 *230
 
 "The [trial] court's findings of fact are conclusive if supported by any competent evidence, and judgment supported by such findings will be affirmed, even though there is evidence contra, or even though some incompetent evidence may also have been submitted."
 
 Brooks v. Brooks,
 

 12 N.C.App. 626
 
 , 628-29,
 
 184 S.E.2d 417
 
 , 419 (1971) (internal quotation marks omitted).
 

 In
 
 Hill I,
 
 the trial court found that the fair market value of the Fairway Drive property as of the date of separation was $35,000.00.
 
 Hill I,
 

 229 N.C.App. at 526
 
 ,
 
 748 S.E.2d at 362
 
 . At the time of the hearing, the Fairway Drive property had been listed for sale for six years, beginning in 2006, and
 
 *38
 
 the trial court valued the lot based upon its listing price.
 
 Id.
 
 at 527,
 
 748 S.E.2d at 363
 
 . In
 
 Hill I,
 
 this Court held that the "listing price for real property is nothing more than the amount for which the parties would like to sell the property[, and i]t has no bearing upon the fair market value of the property, which is the amount that the trial court is required to determine for equitable distribution."
 
 Id.
 
 at 527,
 
 748 S.E.2d at 363
 
 . "Since the propert[y] ha[d] been for sale since 2006 ... with no buyers, [this Court determined that] it [wa]s clear that the listing price was not indicative of the fair market value of the property," and so vacated the portion of the equitable distribution judgment valuing the Fairway Drive property, and remanded the matter to the trial court for further proceedings on this issue.
 
 Id.
 
 at 528,
 
 748 S.E.2d at 364
 
 .
 

 Upon remand, the trial court considered the following testimony offered by Wife regarding the value of the Fairway Drive property as of the date of separation:
 

 Q What did you believe at the date of separation-let me ask you this just for recall. You separated in July of 2009; is that correct?
 

 A. Yes.
 

 Q What do you believe the fair market value of [the Fairway Drive property] was in 2009?
 

 A I can't-do you have the listing? I can't even remember how much we were listing it for. I believe it was lower than the listing, but I don't remember.
 

 ....
 

 Q So at the date of separation, what did you believe that Fairway Drive lot was valued at?
 

 *231
 
 A I think about 45 or-at the date of separation, it was more under my impression from what I had been told. I really don't have knowledge of that kind of stuff.
 

 Q Do you recall purchasing Fairway Drive?
 

 A Yes.
 

 Q Do you recall how much you paid for it?
 

 A Forty-nine thousand.
 

 Q When was it purchased?
 

 A I don't have that with me, I apologize.
 

 Q Do you just recall the year?
 

 A Somewhere around maybe 2005. I honestly-I apologize.
 

 Based upon this testimony, the trial court made the following findings of fact with respect to the value of the Fairway Drive property as of the date of separation:
 

 20. The parties purchased the lot in 2005 for $49,000.00 with the intention of reselling the property for a profit. The property was on the market for sale for approximately seven years with two offers to purchase.
 

 21. The fair market value of Fairway Drive as of the date of separation of the parties was $45,000.00 based upon the opinion of [Wife,] which she formed from the purchase price of the property, the decline in the overall market from the date of purchase, the listing price for the property over the years, discussions with realtors and other lots for sale in the neighborhood and the loss [Husband] has claimed on the property on his individual income taxes for 2013....
 

 22. [Husband] testified that in his opinion the fair market value of the property as of the date of separation was $20,000.00. There was no credible evidence offered to the Court as to how [Husband] arrived at his opinion of the value of the property except that the property had not sold while on the market for seven years.
 

 *232
 
 Husband argues that the trial court's findings concerning the valuation of the Fairway Drive property as of the date of separation were not based upon the evidence presented.
 

 As we recognized above, it is generally held that a property owner is competent to testify as to the value of his or her property "
 
 [u]nless
 
 it affirmatively appears that the owner does not know the market value of his property."
 
 See
 

 *39
 

 Goodson,
 

 145 N.C.App. at 361
 
 ,
 
 551 S.E.2d at 204
 
 (emphasis added) (internal quotation marks omitted). Although Wife presented competent evidence that the purchase price of the Fairway Drive property was $49,000.00, Wife's testimony did not support the trial court's finding with respect to the property's fair market value as of the date of separation. When asked what she believed to be the date of separation value of the Fairway Drive property, after trying to remember the listing price-which this Court held was "not indicative of the fair market value of the property,"
 
 see
 

 Hill I,
 

 229 N.C.App. at 528
 
 ,
 
 748 S.E.2d at
 
 364 -Wife said: "I think about 45 or-at the date of separation, it was more under my impression from what I had been told.
 
 I really don't have knowledge of that kind of stuff.
 
 " (Emphasis added.) After reviewing Wife's testimony as to her opinion regarding the fair market value of the Fairway Drive property as of the date of separation, we conclude that the evidence in the record did not support the trial court's valuation of the property at $45,000.00 as of the date of separation. Therefore, we vacate the portion of the trial court's judgment pertaining to the valuation and distribution of the Fairway Drive property.
 

 D.
 
 The Water Rock Properties
 

 Husband next contends the trial court failed to properly distribute the passive loss of value of the parties' one-half interests in two properties located on Water Rock Terrace in Asheville, North Carolina ("the Water Rock properties"). We agree.
 

 As of the date of separation, the parties owned one-half interests in the Water Rock properties, which the parties stipulated were marital property. The parties purchased the Water Rock properties in 2007 for $88,250.00 with the intention of reselling them. Wife gave opinion testimony that, based on the purchase price of the properties, the challenges with respect to the development of the land, her conversations with the realtor, and the current market, the value of the Water Rock properties as of the date of separation was $80,000.00, and that the value of the parties' one-half interests was $40,000.00. As of the date of separation, there was also a lien on the Water Rock properties in the amount
 
 *233
 
 of $45,852.25. Wife gave further opinion testimony that, based on information provided to her by the realtor regarding "percentages of drops in vacant properties and what was sold around there or not sold," the fair market value for the Water Rock properties as of the date of distribution was $72,000.00, and the value of the parties' one-half interests was $36,000.00. In 2012, the deeds for the Water Rock properties were returned to the mortgage lender in lieu of foreclosure.
 

 The trial court valued the Water Rock properties in accordance with Wife's opinion testimony, and found that the passive loss of value of the Water Rock properties since the date of separation was divisible property. The trial court ordered that, although the deeds for the Water Rock properties "ha[d] been relinquished to the lender in lieu of foreclosure on the properties," the "marital half interest[s] in these two properties [we]re distributed to [Husband] at the fair market value of $40,000.00," and Husband "shall be solely entitled to any and all tax deductions or losses he may be able to claim for said properties." However, in its equitable distribution judgment, the trial court indicated that the value of the Water Rock properties was "$36,000.00 (net 0)," but did not distribute the passive loss in accordance with its earlier findings. Therefore, we vacate the portion of the trial court's judgment pertaining to the valuation and distribution of the Water Rock properties, and remand this matter to the trial court for further consideration of this issue in light of this opinion.
 

 E.
 
 The Gaston Mountain Property
 

 Husband next contends the trial court failed to properly distribute the proceeds from the sale of the real property located on Gaston Mountain Road in Asheville, North Carolina ("the Gaston Mountain property"). We agree.
 

 As of the date of separation, the parties together owned a one-half interest in the Gaston Mountain property, which the parties stipulated was marital property. Wife gave opinion testimony that, based on the purchase price of the property, the location of the property, the development in the area, and her conversations with the realtor, the
 
 *40
 
 value of the Gaston Mountain property in its entirety as of the date of separation was $80,000.00. As of the date of separation, there was also a lien on the Gaston Mountain property in the amount of $45,552.25.
 

 Additionally, although the parties together owned a one-half interest in the Gaston Mountain property as of the date of separation, at trial, Husband testified as follows:
 

 *234
 
 Q Subsequent to the last hearing, did the person who owned the other one-half interest [in the Gaston Mountain property] take some action regarding this property?
 

 A He did. He was a joint owner and carried the only debt on the property. He had financial hardship, and his lender on his primary residence could not refinance or modify his loan while he maintained an ownership in any other property within the square mile calculation they had. So he asked to be removed. He processed a quitclaim deed for that, and he agreed to walk away from that without any additional compensation just to be able to retain his primary residence.
 

 Based on this evidence, the trial court found that "[t]he third party owner of this property relinquished his ownership interest to [Husband] and [Wife]
 
 after the date of separation of the parties.
 
 There was [sic] no funds exchanged between the third party owner and [Husband] and [Wife] herein for the relinquishment." (Emphasis added.)
 

 The trial court then found that the fair market value for the Gaston Mountain property as of the date of distribution in 2014 was $60,500.00, which was the price for which the property was sold in 2012. The trial court further found that the net proceeds of the sale for the Gaston Mountain property were $6,782.11. However, the trial court then concluded that the fair market value of the "marital half interest" was $30,250.00, but distributed the $6,782.11 in proceeds from the sale, in their entirety, to Wife. The record before us indicates that only one-half of the Gaston Mountain property was acquired during the course of the marriage and was, therefore, marital property. Thus, if the later-acquired, one-half interest of the Gaston Mountain property was not marital property and the only portion of the proceeds subject to distribution was the portion derived from the sale of the marital interest in the property as of the date of separation, the trial court erred by distributing the entire $6,782.11 proceeds from the sale of the Gaston Mountain property to Wife. However, since "funds received after the separation may appropriately be considered as marital property when the right to receive those funds was acquired during the marriage and before the separation,"
 
 see
 

 Allen,
 

 168 N.C.App. at 374
 
 ,
 
 607 S.E.2d at 335
 
 , we remand this matter to the trial court to classify and distribute the one-half interest in the Gaston Mountain property acquired by the parties after the date of separation.
 

 *235
 
 F.
 
 Valuation of Retirement Accounts
 

 Husband next contends the trial court's finding regarding the valuation of Husband's 401(k) account was inconsistent with the parties' stipulations. We agree.
 

 In the final equitable distribution pretrial order preceding the 11 September 2014 amended equitable distribution judgment from which Husband appeals, the trial court found that "[t]he parties stipulate[d] that all retirement, 401(k), pension and similar financial accounts should be considered with a tax impact of twenty percent (20%) in the [trial c]ourt's final determination of the balances of accounts for distribution to the parties." The trial court made the following finding with respect to these accounts:
 

 The following retirement accounts are marital assets per prior stipulations of the parties. The parties stipulated to the twenty percent tax impact of said accounts and the Court distributes the accounts as follows:
 

 a. [Husband] shall receive as his separate property:
 

 401(k)
 

 $46,940.49
 

 (less 20%) $40,552.39
 

 Wachovia Cash Acct
 

 $ 3,325.01
 

 (less 20%) $ 2,660.01
 

 IRA in name of Husband
 

 $26,249.97
 

 (less 20%) $20,999.98
 

 *41
 
 b. [Wife] shall receive as her separate property:
 

 IRA, held in name of Wife
 

 $2,388.99
 

 (less 20%) $1,911.19
 

 IRA, held in name of Wife
 

 $4,884.63
 

 (less 20%) $3,907.70
 

 Each of the net fair market values found by the trial court for these retirement accounts corresponded to the net fair market values to which the parties stipulated. However, the value attributed to Husband's 401(k), less the stipulated twenty-percent "tax impact," was not mathematically correct: $46,940.49 less twenty percent is $37,552.39, not $40,552.39. Nevertheless, in its equitable distribution judgment, the trial court correctly valued the amounts to be distributed for each of these retirement accounts in accordance with the parties' stipulations and its findings, and indicated that the value of Husband's 401(k), less twenty percent of the total for tax impact, was $37,552.39. Since the trial court's findings reflect that it intended to distribute the net fair market value of the parties' respective retirement, 401(k), pension and similar financial
 
 *236
 
 accounts, less the twenty percent tax impact, upon remand for other issues, we instruct the trial court to correct the mathematical error reflected in its Decretal Paragraph 13 with regard to the amount to be distributed to Husband from his 401(k).
 

 G.
 
 Distributive Factor Regarding Tax Consequences for Retirement Accounts
 

 Husband next contends the trial court "ignore[d]" the parties' pretrial stipulations concerning the valuation of the marital retirement and pension accounts by attributing, under the designation "Tax impact not likely to be incurred," $15,330.09 to Husband and $1,454.73 to Wife in its distributional factors-which corresponded to the twenty-percent tax impact amounts the parties had stipulated to deducting from the net fair market valuations of the retirement and pension accounts-and used these values in determining that Wife was entitled to a distributive award. Husband asserts the trial court had no authority to consider the likelihood of whether tax consequences would result upon the court's distribution of the retirement and pension accounts because Husband had "no notice and no opportunity to be heard" on the matter. We disagree.
 

 "Courts do not have authority to change provisions of an order which affect the rights of the parties without notice and an opportunity for hearing."
 
 Plomaritis v. Plomaritis,
 

 222 N.C.App. 94
 
 , 107,
 
 730 S.E.2d 784
 
 , 793 (2012). "Just as a party requesting to set aside a stipulation would have to give notice to the opposing parties, and the opposing parties would have an opportunity for hearing upon the request,"
 
 id.
 
 at 108,
 
 730 S.E.2d at 793
 
 (citation omitted), "the trial court cannot [on] its own motion set aside a pre-trial order containing the parties' stipulations after the case has been tried in reliance upon that pre-trial order, without giving the parties notice and an opportunity to be heard."
 

 Id.
 

 (internal quotation marks omitted).
 

 At trial, after the parties presented their respective evidence as to the valuation, classification, and distribution of the marital property, the trial court heard the parties' arguments regarding the distributional factors set forth in N.C. Gen.Stat. § 50-20(c). With respect to the trial court's consideration of the tax consequences to each party, the parties' respective counsel brought forth the following argument:
 

 BY [WIFE'S COUNSEL] MS. VARDIMAN:
 

 Your Honor, in regard to Factor 11 which are the tax consequences, I believe the parties have already stipulated in
 
 *237
 
 the final pretrial order of the 20 percent tax impact. We would ask the Court, Your Honor, to consider those tax consequences and the likelihood of whether or not that they would occur. Under the factors, Your Honor, it's not only the tax consequences, but the likelihood of whether or not they occur. It's specifically listed in the statute that the Court may consider that. It's our contention, Your Honor, that even though there may be a 20 percent tax impact in consideration of distribution of retirement
 
 *42
 
 monies, I don't believe, Your Honor, that there would be any tax consequences or any likelihood of items being sold or having to be liquidated. So I believe there is a very low likelihood of any of these tax consequences occurring. Anything, Ms. Arrowood, in regard to 11? ...
 

 BY THE COURT:
 

 Do you have anything else to add to that?
 

 BY [HUSBAND'S COUNSEL] MS. ARROWOOD:
 

 Your Honor, I don't.
 

 Thus, Wife's counsel brought forward this issue for the trial court's consideration at the hearing, and Husband's counsel raised no objection to the contention and, when invited by the court to do so, Husband's counsel declined to be heard on the matter. Because the issue was raised at the hearing and Husband declined to challenge the issue, we must overrule this issue on appeal.
 

 H.
 
 The Sunnybrook Property
 

 Husband contends the trial court erroneously awarded Wife a "double credit" for the $45,424.55 reduction in the mortgage debt that had occurred since the date of separation on the real property located at 46 Sunnybrook Drive, in Asheville, North Carolina ("the Sunnybrook property"). Husband asserts that Wife received a double credit when the court both (1) distributed the Sunnybrook property to Wife for a net market value reflecting the mortgage reduction amount that resulted in an increase in the valuation of the home, and (2) credited Wife for her post-separation mortgage payments on the property as a distributional factor. We disagree.
 

 "A spouse is entitled to some consideration, in an equitable distribution proceeding, for any post-separation payments made by that spouse (from non-marital or separate funds) for the benefit of the marital estate."
 

 *238
 

 Walter v. Walter,
 

 149 N.C.App. 723
 
 , 731,
 
 561 S.E.2d 571
 
 , 576-77 (2002). "To accommodate post-separation payments, the trial court may treat the payments as distributional factors under section 50-20(c)(11a), or provide direct credits for the benefit of the spouse making the payments."
 
 Id.
 
 at 731,
 
 561 S.E.2d at 577
 
 (citation omitted). "If the property is distributed to the spouse who did not have ... post-separation use of it or who did not make post-separation payments relating to the property's maintenance (i.e. taxes, insurance, repairs), the use and/or payments must be considered as either a credit or distributional factor."
 
 Id.
 
 at 732,
 
 561 S.E.2d at 577
 
 . "If, on the other hand, the property is distributed to the spouse who had ... post-separation use of it or who made post-separation payments relating to its maintenance, there is, as a general proposition, no entitlement to a credit or distributional factor."
 

 Id.
 

 "Nonetheless, the trial court may, in its discretion, weigh the equities in a particular case and find that a credit or distributional factor would be appropriate under the circumstances."
 

 Id.
 

 Husband directs our attention to
 
 Smith v. Smith,
 

 111 N.C.App. 460
 
 ,
 
 433 S.E.2d 196
 
 (1993). In
 
 Smith,
 
 the trial court gave the husband full credit for his post-separation payments that resulted in the discharge of a second mortgage that had a balance due of $189,956.00 on the marital home, which home was distributed to the husband.
 
 See
 

 id.
 
 at 508,
 
 433 S.E.2d at 225
 
 . The court further stated that "to avoid a double treatment of [the husband's] discharge of the second mortgage, which increased the net value of the home as of the date of trial by $189,956, the court was going to subtract that amount from the post[-]separation appreciation attributed to this asset."
 

 Id.
 

 On appeal, this Court determined that, by giving the husband "a full credit for his discharge of the second mortgage," the trial court "reimbursed [him] in full for his expenditure towards that debt and restored him to the position he would have been in, monetarily, had he not made any payments towards that debt, thereby putting the parties on equal footing with respect to that debt and asset."
 
 Id.
 
 at 511,
 
 433 S.E.2d at 227
 
 . However, "[the husband's] discharge of the second mortgage increased the net value of the marital home as of the date of trial by $189,956, which increase inured to the benefit of [the husband] since he was awarded the home."
 

 Id.
 

 Since the husband "received the benefit of that increase in value by the distribution of
 
 *43
 
 the home to him, [this Court determined that the wife] was entitled to have that increase taken into consideration by the court in determining an equitable distribution."
 
 Id.
 
 at 511-12,
 
 433 S.E.2d at 227
 
 . "[B]ecause the court did not include the amount of the second mortgage in the total of the post [-]separation appreciation of the marital property, thereby depriving [the wife] of the benefit from the increase in value of the home to which she was entitled,"
 
 id.
 
 at 512,
 
 433 S.E.2d at 227
 
 , this Court
 
 *239
 
 remanded the matter with the instruction that, on remand, the trial court "should either include the $189,956 in the post[-]separation appreciation considered by it in determining what division [wa]s equitable, or explain more fully in its findings of fact how deletion of this amount from the post[-]separation appreciation d[id] not result in a double credit to [the husband]."
 
 See
 
 id.
 

 In the present case, the parties stipulated that the Sunnybrook property was marital property with a fair market value of $375,000.00 as of the date of separation, and a fair market value of $405,000.00 as of the date of the hearing. The trial court also found, and Husband does not dispute, that: (1) Wife has "continuously occupied" the property since the date of separation and currently resides there with the children; (2) the net market value of the Sunnybrook property as of the date of separation was $375,000.00, less the mortgage debt on the property as of the date of separation totaling $366,513.30, or $8,486.70; (3) Wife made post-separation mortgage payments on the Sunnybrook property totaling $92,174.32, and Husband made post-separation mortgage payments on the Sunnybrook property totaling $8,832.00; (4) the net market value of the Sunnybrook property as of the date of the hearing was $405,000.00, less the mortgage debt on the property as of the date of the hearing totaling $321,088.75, or $83,911.25; (5) the trial court distributed the Sunnybrook property to Wife at the net market value of $83,911.25; and (6) the trial court included among its distributive factors Wife's payments of $92,174.32 and Husband's payments of $8,832.00 as credits for Wife and Husband, respectively, toward "preserv[ing] the marital estate after the separation of the parties by paying mortgages, taxes, home owner association fees and insurance on the parcels of real estate as they became due."
 

 Thus, in addition to crediting Wife for her mortgage payments as a distributive factor, the trial court distributed to Wife the Sunnybrook property with a net market value of $83,911.25. As Husband recognizes in his brief, this value reflects the following: the $30,000.00 passive increase in value of the property from $375,000.00 as of the date of separation to $405,000.00 as of the date of the hearing; the $8,486.70 net value of the property as of the date of separation; and the $45,424.55 reduction in the mortgage debt on the property from $366,513.30 as of the date of separation to $321,088.75 as of the date of the hearing. Thus, as in
 
 Smith,
 
 by giving Wife credit for her mortgage payments on the Sunnybrook property as a distributive factor, "the court reimbursed [Wife] in full for [her] expenditure towards that debt and restored [her] to the position [s]he would have been in, monetarily, had [s]he not made any payments
 
 *240
 
 towards that debt, thereby putting the parties on equal footing with respect to that debt and asset."
 
 See
 

 Smith,
 

 111 N.C.App. at 511
 
 ,
 
 433 S.E.2d at 227
 
 . However, unlike
 
 Smith,
 
 the trial court took the increase in the value of the Sunnybrook property into consideration in determining equitable distribution because the amount of Wife's mortgage payments, which increased the net value of the marital home, were included in the total of the post-separation appreciation of the property.
 
 Cf.
 

 id.
 
 at 508,
 
 433 S.E.2d at 225
 
 . Accordingly, we conclude the trial court did not award Wife a double credit for her payments on the mortgage debt of the Sunnybrook property by accounting for those payments among Wife's distributive factors and reflecting the increase in net value of the marital home, which was distributed to Wife. Thus, we overrule this issue.
 

 I.
 
 The Distributive Award
 

 Husband next contends the trial court abused its discretion by ordering the payment of a distributive award. Husband asserts the trial court "fail[ed] to state a finding sufficient to indicate its basis for entering a distributive award." We disagree.
 

 *44
 
 N.C. Gen.Stat. § 50-20(e) provides that "it shall be presumed in every action that an in-kind distribution of marital or divisible property is equitable," and that "[t]his presumption may be rebutted by the greater weight of the evidence, or by evidence that the property is a closely held business entity or is otherwise not susceptible of division in-kind." N.C. Gen.Stat. § 50-20(e). "[I]f the trial court determines that the presumption of an in-kind distribution has been rebutted, it must make findings of fact and conclusions of law in support of that determination."
 
 Urciolo v. Urciolo,
 

 166 N.C.App. 504
 
 , 507,
 
 601 S.E.2d 905
 
 , 908 (2004). "In any action in which the presumption is rebutted, the court in lieu of in-kind distribution shall provide for a distributive award in order to achieve equity between the parties," and "may provide for a distributive award to facilitate, effectuate or supplement a distribution of marital or divisible property." N.C. Gen.Stat. § 50-20(e) ;
 
 see also
 
 N.C. Gen.Stat. § 50-20(b)(3) ("[A 'd]istributive award' [is defined as] payments that are payable either in a lump sum or over a period of time in fixed amounts, but shall not include alimony payments or other similar payments for support and maintenance which are treated as ordinary income to the recipient under the Internal Revenue Code.").
 

 In the present case, after the trial court made twelve findings corresponding with at least nine of the twelve distributional factors set forth in N.C. Gen.Stat. § 50-20(c), the court concluded that "[a]n unequal division of the marital estate [wa]s equitable considering the distributional
 
 *241
 
 factors set forth [in the equitable distribution judgment]." After reviewing the record, we conclude the trial court made sufficient findings to indicate its basis for entering a distributive award and did not abuse its discretion by ordering a distributive award based on the distributional factors it considered.
 

 J.
 
 Divisible Property and the 2013 Amendments to
 

 N.C. Gen.Stat.
 
 § 50-20(b)(4)(d)
 

 Effective 1 October 2013, the General Assembly amended the definition of "divisible property" set forth in N.C. Gen.Stat. § 50-20(b)(4)(d) to provide that such property specifically includes "
 
 [p]assive
 
 increases and
 
 passive
 
 decreases in marital debt and financing charges and interest related to marital debt." N.C. Gen.Stat. § 50-20(b)(4)(d) (emphases added);
 
 see also
 

 2013 N.C. Sess. Laws 208
 
 , 208-09, ch. 103, §§ 1, 2. In his final issue on appeal, Husband suggests that the trial court may have erroneously classified "active increases" in marital debt as divisible property for post-separation payments made on or after 1 October 2013. While we agree with Husband that only passive increases and decreases in marital debt on or after 1 October 2013 should have been classified as divisible property by the trial court, Husband does not identify which, if any, divisible property was so erroneously classified. Our review of the amended equitable distribution judgment in its entirety reflects that the trial court only classified two properties as divisible: "[t]he passive reduction in the value of the [Fairway Drive] property since the date of separation;" and "[t]he passive loss of value of the [Water Rock properties] since the date of separation." Because Husband does not direct our attention to any property that was classified by the trial court as divisible in contravention of the 2013 amendments to N.C. Gen.Stat. § 50-20(b)(4)(d), and because the only property we found that was classified and distributed as divisible by the trial court was by passive decreases, we conclude the properties classified as divisible by the trial court in the amended equitable distribution judgment were so classified in accordance with the statutory mandates of N.C. Gen.Stat. § 50-20(b)(4)(d) that were applicable both before and after the General Assembly's 2013 amendments. Accordingly, we overrule this issue.
 

 IV.
 
 Conclusion
 

 In sum, we vacate the portion of the trial court's judgment pertaining to the equity line debt, and remand this matter for the trial court to reconsider its Findings of Fact 59, 61, and 62 in light of the evidence presented, and to classify, value, and distribute the equity line debt in accordance with its findings. We conclude that the trial court erred
 
 *242
 
 by finding that Wife "earned income as an officer of the corporation" beginning in 2011, but did not err by failing to classify and distribute the $115,136.00 earned by the corporation, since those earnings are still held by the
 
 *45
 
 corporation and so are not marital property. We vacate the portion of the trial court's judgment pertaining to the valuation and distribution of the Fairway Drive property. We vacate the portion of the trial court's judgment pertaining to the valuation and distribution of the Water Rock properties, and remand this matter to the trial court for further consideration of this issue in light of this opinion. We remand this matter to the trial court to classify, value, and distribute the one-half interest in the Gaston Mountain property acquired by the parties after the date of separation. We instruct the trial court to correct the mathematical error reflected in its Decretal Paragraph 13 with regard to the amount to be distributed to Husband from his 401(k). We overrule Husband's contention that the trial court had no authority to consider the likelihood of whether tax consequences would result upon the court's distribution of the retirement and pension accounts. We conclude that the trial court did not award Wife a double credit for her payments on the mortgage debt of the Sunnybrook property by accounting for those payments among Wife's distributive factors and reflecting the increase in net value of the marital home, which was distributed to Wife. We conclude the trial court made sufficient findings to indicate its basis for entering a distributive award and did not abuse its discretion by ordering a distributive award based on the distributional factors it considered. Finally, we conclude the properties classified as divisible by the trial court in the amended equitable distribution judgment were so classified in accordance with the statutory mandates of N.C. Gen.Stat. § 50-20(b)(4)(d) that were applicable both before and after the General Assembly's 2013 amendments.
 

 We further conclude that the remaining issues on appeal for which Husband failed to provide adequate legal support are deemed abandoned.
 
 See
 
 N.C.R.App. P. 28(a).
 

 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 

 Judges HUNTER, JR. and DAVIS concur.